**UNITED STATES of America, Appellee,**

v.

**John Harlan SHANGREAUX, Appellant.**

**Nos. 89–5216, 89–5264.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1989.

Decided March 1, 1990.

We also doubt that North Dakota courts would find that Peterson's death constituted an abandonment of the homestead. In order to find an abandonment of a homestead, the trial court must determine that the debtor has voluntarily departed from the homestead property, and left without the intent to return and occupy it as a home. *Farmers State Bank v. Slaubaugh*, 366 N.W.2d 804, 808 (N.D.1985) (*Slaubaugh*). Peterson passed away. He did not admit residency of another state, enter into a divorce, or otherwise voluntarily relinquish his homestead property. *See Slaubaugh*, 366 N.W.2d at 808 (abandonment of homestead found when claimant admitted under oath that he was an actual, bona fide resident of another state); *Young v. White*, 267 N.W.2d 799, 802 (N.D.1978) (homestead terminated by divorce because status as head of household lost). The debtor's death in this case is most akin to the situation presented in *Larson v. Cole*, 76 N.D. 32, 33 N.W.2d 325 (1948), where the Supreme Court of North Dakota found no abandonment because the claimant was *involuntarily* called away from the property to serve as a dentist during World War II. *Id.* 33 N.W.2d at 327–30. The court found that the claimant did not voluntarily relinquish his homestead even though he moved his wife and daughter to a different state, offered the homestead for sale, sold nearly all of its furnishings and household goods, and gave a lease for the premises with an option to buy. Although it appears that North Dakota courts have yet to resolve this issue, we do not believe that death would constitute a voluntary departure from or relinquishment of the homestead property.

Benjamin J. Eicher, Rapid City, S.D., for appellant.

Ted L. McBride, Sioux Falls, S.D., for appellee.

Before WOLLMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and McMILLAN,* District Judge.

WOLLMAN, Circuit Judge.

John Harlan Shangreaux appeals from the district court's[1] revocation of his probation, as well as from the court's failure to give him jail credit for the time he served in a work release program and the time he was detained prior to his revocation hearing. We affirm.

* The HONORABLE JAMES B. McMILLAN, United States District Judge for the Western District of North Carolina, sitting by designation.

## I. BACKGROUND

On June 22, 1987, Shangreaux pleaded guilty to assault with a dangerous weapon, in violation of 18 U.S.C. §§ 113(c) and 1153. On August 12, 1987, the district court sentenced him to three years' imprisonment. The court suspended the prison term and placed Shangreaux on probation for three years, on the condition that he be confined in a jail-type or treatment institution for six months.

The judgment imposed general and special conditions of probation, including Special Condition No. 4:

That the defendant enter, reside in and participate meaningfully in a treatment program for alcoholism or drug addiction/dependency, which may include a halfway house, an inpatient treatment center, or a jail type work release program, pursuant to 18 U.S.C. § 3651.

*United States v. Shangreaux,* No. CR 87–50033–01 (Aug. 12, 1987), Judgment and Probation/Commitment Order.

Shangreaux served six months' incarceration and was released on probation in December 1987. In September 1988, Shangreaux's probation officer received a report that Shangreaux was facing charges in state court in Bennett County, South Dakota. The state's attorney in Bennett County agreed that if Shangreaux participated in a treatment program he would forego prosecution in state court. The probation officer then arranged for Shangreaux to reside in Friendship House in Rapid City, South Dakota, pursuant to Special Condition No. 4. Shangreaux resided at the Friendship House until early September, when he left without permission and returned six days later.

The probation officer then placed Shangreaux in the work release program of the Pennington County Jail for thirty days pending his placement in residential alcohol treatment at the Heart View Program in

1. The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

Mandan, North Dakota.[2] Shangreaux successfully completed the alcohol treatment program at Heart View. His probation officer then required him to receive aftercare treatment and allowed him to travel to Denver, Colorado, to participate in the Eagle Lodge Halfway House alcohol program. Shangreaux lived with his wife and stepdaughter in the Denver area some eight to ten miles from the treatment center. Shangreaux testified that he did not participate in the program because he had car problems.

A Colorado probation officer who had been working with Shangreaux's South Dakota probation officer told Shangreaux that he would have to return to South Dakota by March 3 or 4, 1989. Shangreaux then called his South Dakota probation officer and told him that he was having car trouble and could not return immediately. The probation officer testified that he told Shangreaux to return to South Dakota by March 10. Between March 3–4 and March 15, 1989, neither of the probation officers had word from Shangreaux. On March 15, 1989, Shangreaux's wife called the Colorado probation officer and told him that Shangreaux was drunk and was threatening her with a knife.

On March 16, 1989, the district court issued an order of warrant for Shangreaux's arrest, and the South Dakota probation officer filed a petition to revoke probation. The petition alleged five grounds upon which a revocation was being premised.

At the probation revocation hearing, Shangreaux admitted to two of the alleged violations and denied the remaining three. He admitted that he had violated pass rules at the Friendship House in September 1988 —a violation of a specific condition of his probation—and that he had consumed alcohol during the term of his probation, although consuming alcohol was not expressly prohibited in the probation conditions. The district court found that Shangreaux had violated probation. The court revoked his probation and sentenced him to serve the balance of his sentence. The district court later issued an order setting forth the evidence relied on and the reasons for revoking probation, as required by *United States v. Smith,* 767 F.2d 521 (8th Cir. 1985).

## II. DISCUSSION

We review the decision of a district court to revoke probation under an abuse of discretion standard. *United States v. Wickenhauser,* 710 F.2d 486, 487 (8th Cir.1983).

Shangreaux asserts that the primary ground upon which the district court revoked his probation was his admitted consumption of alcohol during his probation. Shangreaux contends that his admission was to the factual allegation, not to the legal allegation that he had violated a condition of his probation. Shangreaux asserts that the district court indicated that Shangreaux's drinking problem furnished the foundation for the revocation. Shangreaux argues that the conditions of his probation did not prohibit him from drinking alcohol, that he did not receive a fair warning that this act would lead to a loss of liberty, and that his due process rights were therefore violated.

Apart from Shangreaux's alcohol consumption, however, the district court stated several additional reasons for revoking Shangreaux's probation. These included Shangreaux's admission that he had left the Friendship House without permission, in violation of Special Condition No. 4, and the testimony of the probation officer with regard to the alleged violations of the conditions of probation. The district court's order stated:

---

2. On September 8, 1988, Shangreaux consented to the following modification of the terms of his probation order:

ORDERED that probationer reside and participate in a program of an approved residential community treatment center, which may include a halfway house, an inpatient treatment center, or a jail work release program, as directed by the probation officer under the provisions of 18 U.S.C. § 3563(b)(12), and that the costs of such placement shall be paid by the U.S. Bureau of Prisons.

(4) The petition alleged that on January 6, 1989, defendant failed to enroll and participate in local alcohol care as instructed in violation of Condition No. 6 and Special Condition No. 4. The testimony of [the South Dakota probation officer] was that defendant failed to enroll at the Eagle Lodge Halfway House in Denver, Colorado, as required by the terms of his probation.

\* \* \* \* \* \*

(6) The petition alleged that on March 10, 1989, defendant failed to return to the District of South Dakota as instructed by his probation officer in violation of Condition Nos. 5 and 6. The testimony of [the South Dakota probation officer] was that defendant was told to return to South Dakota by March 10, 1989, and as of March 15, 1989, the date of the petition, defendant had not returned and had made no attempt to contact the probation office.

These findings are supported by the evidence and amply support the district court's order of revocation. Thus, we need not consider whether Shangreaux's consumption of alcohol constituted a violation of the conditions of the probation order.

Shangreaux next contends that the district court erred in failing to give him credit for the thirty days he resided in the Pennington County Jail work release program and the approximately fifteen days during which he was detained prior to his revocation hearing. Shangreaux is not, however, entitled to credit for time spent on probation. *See United States v. Hawkins*, 492 F.2d 771 (5th Cir.), *cert. denied*, 419 U.S. 1052, 95 S.Ct. 629, 42 L.Ed.2d 647 (1974). Special Condition No. 4 provided that as part of his probation Shangreaux might be required to reside in a "jail type work release program." The thirty days Shangreaux spent in the Pennington County Jail after he returned from his unauthorized leave from Friendship House was a form of residence required by his probation. Accordingly, he is not entitled to credit for this time. With respect to the time he was detained prior to his revocation hearing, the district court noted that that

was a matter for the Bureau of Prisons to take into account.

The order of revocation is affirmed.