**PUBLISHED**

Present:  Chief Judge Decker, Judges Beales, Huff, O'Brien, Malveaux, Athey, Fulton, Ortiz,
     Causey, Friedman, Chaney, Raphael, Lorish, Callins and White
Argued at Richmond, Virginia


STEVE WAYNE SHIFFLETT

                OPINION BY
v.   Record No. 0675-22-2     JUDGE DANIEL E. ORTIZ
                JULY 16, 2024
COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF BUCKINGHAM COUNTY
J. Leyburn Mosby, Jr., Judge Designate

Kevin E. Calhoun (Charles C. Cosby, Jr., on brief), for appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Circuit court judges must rely upon probation officers to supervise the administration and

logistics of conditions of probation articulated at sentencing as "special conditions."  This

delegation of authority does not convert the failure to follow instructions associated with such

special conditions into technical violations.  Code § 19.2-306.1 limits the ability of a circuit court to

impose active incarceration for "technical violations" of probation and does not limit the amount of

active incarceration for violations of non-technical special conditions.  The failure to complete

court-ordered sex offender counseling and community service does not match conduct listed in

Code § 19.2-306.1(A), and such violations are non-technical in nature.  Therefore, the circuit court

did not err when it deemed that Steve Wayne Shifflett's failure to complete sex offender counseling

and 200 hours of community service was a violation of a non-technical special condition of

probation and imposed an active sentence in excess of fourteen days. (R. 141-42; 181). We, thus affirm the circuit court's judgment.

BACKGROUND

On October 7, 2020, Steve Wayne Shifflett pleaded guilty, pursuant to an *Alford* plea agreement,[1] to aggravated sexual battery in violation of Code § 18.2-67.3. Per the terms of the plea agreement, the circuit court sentenced him to twenty years' incarceration. The court suspended the sentence conditioned on Shifflett's successful completion of two years' supervised probation. The court imposed several conditions on Shifflett's suspended sentence, including ordering Shifflett to "comply with a plan of 200 hours of community service coordinated through adult probation that shall all be completed by October 7, 2021." The supervised probation section ("supervised probation condition") of his sentence also included several conditions. The supervised probation condition stated in full:

> (**X**) **Supervised Probation**: The defendant shall be placed on supervised probation under the supervision of the Office of Department of Probation and Parole serving this Court (District 24 Probation and Parole) for a period commencing upon sentencing for **Two (2) Years** in which case the defendant shall report to probation within 48 hours from this sentencing date in order to schedule an intake appointment, and follow all the rules and regulations of probation, unless sooner released by court. (**X**) The defendant shall comply with all the rules and requirements set by the Probation Officer. (**X**) The defendant shall successfully complete any screening, assessment, testing, treatment and/or education as directed by the probation officer. (**X**) The defendant shall pay any fees and costs required by the probation officer. Failure to adhere to conditions of probation could result in a show cause and/or capias against the defendant.

Relevant to this discussion, the condition specifically required Shifflett to "successfully *complete* any screening, assessment, testing, treatment and/or education as directed by the

---

[1] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

probation officer." (Emphasis added). In addition, the circuit court separately ordered Shifflett to enroll in counseling ("counseling condition"), stating in full:

> **(X) Counseling**: The defendant shall immediately enroll in counseling after this sentencing date with a licensed sex offender provider/counselor, relating to his sexual conduct and matters associated therewith.

On October 9, 2020, Shifflett began supervised probation and agreed to the general terms of probation, which included Condition 6—requiring him to follow his probation officer's instructions and be "truthful [and] cooperative." Additionally, Shifflett signed "[s]ex [o]ffender [s]pecial [i]nstructions" that required him to "[a]ttend and successfully complete a [s]ex [o]ffender [t]reatment [p]rogram approved by [his] supervising officer."

On November 30, 2021, Shifflett's probation officer, Rebecca Moss, issued a major violation report reporting that he had violated Condition 6 by being "rude" and uncooperative during office appointments in November 2020 and April 2021. Shifflett also began sex offender counseling through the Probation and Parole Office in December 2020, but he was "unsuccessfully discharged" about a year later due to his "lack of progress and therapy[-]interfering behavior," including Shifflett's refusal to accept "accountability" for his offense.

Moss further reported that she had instructed Shifflett to "secure a community service site" and obtain her approval of the site before starting his service. She had authorized Shifflett to perform community service at a fire department, where he completed 44 hours of community service by July 3, 2021. Shifflett also completed 161 hours of community service at a church in February 2021, but Moss "could not accept" those hours because Shifflett did not get her permission prior to performing those hours at the church. Moss discussed Shifflett's community service with Fire Chief Marcus, who supervised the 44 hours of approved community service Shifflett performed at the fire station. Chief Marcus confirmed that Shifflett had performed an

- 3 -

additional 161 hours at a local church at his direction but did not provide the name of the church. Accordingly, Moss reported that Shifflett had "failed to complete his 200 hours of community service" by October 7, 2021. The circuit court issued a capias for the violation on December 7, 2021; Shifflett was arrested on December 18, 2021.

At the revocation hearing, the parties consented to apply recently amended and reenacted Code § 19.2-306(C) and newly enacted Code § 19.2-306.1 to the proceedings.[2] Shifflett conceded that he had violated the terms of his probation as Moss had reported but argued that the circuit court could not impose an active sentence.[3] He maintained that his violations were "technical violations" under Code § 19.2-306.1(A) and the circuit court could not impose active incarceration for a "first technical violation" under Code § 19.2-306.1(C). The Commonwealth

---

[2] Amended and reenacted Code § 19.2-306(C) and newly enacted Code § 19.2-306.1, which took effect on July 1, 2021, do not apply to violation hearings when the conduct underlying the violations and when revocation proceedings occurred before the change in law— unless the parties agree to proceed under the new statute. *See Green v. Commonwealth¸* 75 Va. App. 69, 84 (2022) ("The Commonwealth objected to the application of Code § 19.2-306.1, and the absence of an agreement between the parties to proceed under the new statute forecloses the possibility of applying that statute in mitigation of Green's punishment."); *see also* 2021 Va. Acts Spec. Sess. I ch. 538; *Commonwealth v. Delaune*, 302 Va. 644, 653 (2023) ("Code § 1-239 permits the parties in a criminal case to agree to proceed under a new, nonretroactive statute in certain circumstances."). The Commonwealth argues on brief that the new statutory framework did not apply to Shifflett's revocation hearing, because some of his violation conduct preceded the statutes' effective date and the parties did not agree to apply the new laws. But at oral argument, the Commonwealth acknowledged that this Court has held that parties consented to applying the new laws to revocation proceedings where, as here, "the probation officer prepared guidelines relying on the [new statutory] framework," and the Commonwealth did not assert that the defendant's argument based on Code § 19.2-306.1 was "irrelevant or object to the use of Code § 19.2-306.1." *Heart v. Commonwealth*, 75 Va. App. 453, 463-64 (2022); *see Delaune*, 644 Va. at 654 ("[T]he record establishes that the parties implicitly agreed to proceed under Code § 19.2-306.1 during Delaune's probation revocation hearing."). (Oral argument, May 12, 2023, at 11:50-14:45). We find that *Delaune*, *Heart*, and *Green* are controlling and that the parties consented to applying the new statutory framework at the revocation proceedings.

[3] The dissent suggests that Shifflett did not admit to his probation violations. But the language of the revocation order specifically states that he entered an *Alford* plea of guilt to the probation violations. Thus, Shifflett "conced[es] that the evidence is sufficient to convict [him]." *Parson v. Carroll*, 272 Va. 560, 565 (2006).

countered that Shifflett's failure to complete sex offender treatment and 200 hours of community service at an approved location were "special condition" violations, allowing the circuit court to revoke Shifflett's entire sentence.

The circuit court found that Shifflett had failed "to follow special conditions/instructions . . . to complete 200 hours of community service and complete sex offender treatment." The court emphasized that Shifflett was "disruptive with the probation officer" and "failed to follow his probation officer's regulations and instructions." Additionally, the court found that Shifflett's failure to complete community service hours at an approved location was the "minor part of [the] violation"[4] and the "major part" was Shifflett's "attitude" and failure to "cooperat[e] with [his] probation officer." Accordingly, the court revoked ten years of Shifflett's previously suspended sentence and resuspended nine years and nine months—with a total active sentence of three months incarceration. Shifflett appealed.

A panel of this Court, one judge dissenting, found that both the community service and sex offender counseling violations were technical in nature as they were failures to "follow the instructions of the probation officer" under Code § 19.2-306.1(A)(v). Consequently, the panel reversed the circuit court's judgment and remanded the matter for further proceedings for new sentencing.

We granted the Commonwealth's petition for en banc review, staying the panel's decision pending review by the full Court. We now vacate the panel's decision, which found the two violations at issue to be technical, and instead find them both to be non-technical "special condition" violations.

_____

[4] The circuit court suggested that Shifflett consult his probation officer after the revocation hearing to request that she retroactively approve the community service hours he had already completed. The court stated that if the probation officer refused the request, then Shifflett would need to complete the balance of his community service hours.

ANALYSIS

The only issue before this Court is whether Shifflett's probation violations were technical or non-technical under Code § 19.2-306.1(A). Shifflett's right to challenge the sufficiency of the evidence, however, is waived as he pleaded guilty under an *Alford* plea. *See Perry v. Commonwealth*, 33 Va. App. 410, 413 (2000) (holding that by freely and intelligently entering an *Alford* plea, an appellant waives his right to appeal the issue of "whether the evidence was sufficient to prove beyond a reasonable doubt that he was guilty of that charge"). This opinion does not foreclose or impinge on any potential arguments made by probationers as to the vagueness or reasonableness of the instructions, nor does it address any due process claim. Regardless, these arguments were not presented by Shifflett, and he is barred from raising them as he entered an *Alford* plea.

"On appeal, '[w]e "view the evidence received at [a] revocation hearing in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable and legitimate inferences that may properly be drawn from it."'" *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022) (alterations in original) (quoting *Johnson v. Commonwealth*, 296 Va. 266, 274 (2018)). "[T]he trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Heart v. Commonwealth*, 75 Va. App. 453, 460 (2022) (quoting *Green*, 75 Va. App. at 76). "Whether to revoke a suspended sentence 'lies in the discretion of the trial court' and will not be reversed absent an abuse of that discretion." *Thomas v. Commonwealth*, 77 Va. App. 613, 619 (2023) (quoting *Carroll v. Commonwealth*, 280 Va. 641, 654 (2010)). Although such discretion is broad, "it is subject, of course, to any applicable statutory limitations," reviewed de novo. *Id.* at 620.

"[W]hen construing a statute, our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Diaz-Urrutia v.*

*Commonwealth*, 77 Va. App. 182, 190 (2023) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)).  "When the language of a statute is unambiguous, we are bound by the plain meaning of that language."  *Heart*, 75 Va. App. at 466 (quoting *Cuccinelli*, 283 Va. at 425).

Code § 19.2-306(C) provides that "[i]f the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then the court may revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1."  Code § 19.2-306.1 "creates two tiers of probation violations: (1) technical violations, based on a probationer's failure to do one of ten enumerated actions, and (2) non-technical violations."  *Heart*, 75 Va. App. at 466.  The statute "contains specific limitations on sentencing that apply when a circuit court bases its revocation of a suspended sentence on what the statute refers to as certain 'technical violations' enumerated in the statute."  *Green*, 75 Va. App. at 75 (citing Code § 19.2-306.1).  For a "first technical violation," a court "shall not impose a sentence of a term of active incarceration."  *Henthorne v. Commonwealth*, 76 Va. App. 60, 65 (2022) (quoting Code § 19.2-306.1(C)).  "Multiple technical violations arising from a single course of conduct or a single incident or considered at the same revocation hearing shall not be considered separate technical violations for the purposes of sentencing pursuant to this section."  Code § 19.2-306.1(A).  If "the violation conduct matches the conduct listed in Code § 19.2-306.1(A)," the violation is technical in nature.  *Commonwealth v. Delaune*, 302 Va. 644, 652, *aff'g*, 76 Va. App. 372 (2023).  To be sure, the statute "focuses on the underlying violation conduct itself, not the particular language or label a trial court may have used in imposing a condition of probation."  *Id.* (quoting *Delaune*, 76 Va. App. at 383).  The ten technical violations are a "probationer's failure to":

> (i) report any arrest . . . within three days to the probation officer;
> (ii) maintain regular employment or notify the probation officer of
> any changes in employment;
> (iii) report within three days of release from incarceration;

(iv) permit the probation officer to visit his home and place of employment;
(v) follow the instructions of the probation officer, be truthful and cooperative, and report as instructed;
(vi) refrain from the use of alcoholic beverages to the extent that it disrupts or interferes with his employment or orderly conduct;
(vii) refrain from the use, possession, or distribution of controlled substances or related paraphernalia;
(viii) refrain from the use, ownership, possession, or transportation of a firearm;
(ix) gain permission to change his residence or remain in the Commonwealth or other designated area without permission of the probation officer; or
(x) maintain contact with the probation officer . . . .

Code § 19.2-306.1(A).

The technical violations in Code § 19.2-306.1(A) "reflect ten of the eleven specific requirements imposed on all probationers supervised by the Department of Corrections (DOC)." *Thomas*, 77 Va. App. at 621. These violations "are based on the standard Conditions of Probation Supervision signed by a [probationer and] . . . reflect Conditions 2 through 11 of the standard Conditions of Probation Supervision." Va. Crim. Sent'g Comm'n, Annual Report 49 (2021).

But the sentencing limitations do not apply to non-technical violations, which include "violat[ion of] another condition other than (i) a technical violation [in subsection (A)] or (ii) a good conduct violation that did not result in a criminal conviction." *Thomas*, 77 Va. App. at 622 (alterations in original) (quoting Code § 19.2-306.1(B)). These conditions are "'non-technical' by nature since they condition behavior" not enumerated in Code § 19.2-306.1(A). *Burford v. Commonwealth*, 78 Va. App. 170, 183 (2023). Rather, "[t]o be classified as [non-technical] special conditions, the behaviors must be distinct from the conditions included in Code § 19.2-306.1(A)." *Id.*

We additionally note that not every condition supervised by a probation officer falls under the arguably broad category of Code § 19.2-306.1(v) that a probationer must "follow the

instructions of the probation officer." "[U]nless a statute specifically imposes on the circuit court the duty to set the parameters of [a probation] condition . . . , the circuit court may set the bounds of the condition and delegate to the probation office the duty to set the parameters of th[at] condition[]." *Fazili v. Commonwealth*, 71 Va. App. 239, 254 (2019). "Essentially, while the circuit court sets the terms and conditions of probation, probation officers enforce those terms and conditions and exercise discretion in doing so." *Id*. at 246, 255 (holding that where a sentencing order required the defendant to "have no use of any device that can access internet unless approved by his Probation Officer," the circuit court properly "delegate[ed] to the probation officer the authority to supervise [the defendant's] internet usage"). Yet, "courts cannot evade the limiting sentencing scheme for technical violations by 'crafting "special conditions" that encompass conduct defined by the statute as a "technical violation."'" *Burford*, 78 Va. App. at 183 (quoting *Thomas*, 77 Va. App. at 625). Indeed, if a probationer violates a condition specified in his sentencing order, requiring him "to do something that [i]s covered by the enumerated list of technical violations [in Code § 19.2-306.1(A)]," the violation is "a technical violation, not a [non-technical] special condition" violation, because it is based on conduct that Code § 19.2-306.1(A) expressly defines as technical.[5] *Diaz-Urrutia*, 77 Va. App. at 191. Because the "defendant has committed a technical violation," Code § 19.2-306.1(A)'s sentencing limitations apply. *Id*. at 194. Conversely, if the violation conduct does not "match" that listed in Code § 19.2-306.1(A) but matches conduct covered by a non-technical "special condition" imposed by the sentencing court, then it is not subject to any sentencing limitations. *Burford*, 78 Va. App. at 182-83.

_____

[5] It is important to note that a court may articulate a specially identified condition in its sentencing order, but a violation of the condition should still be considered technical, if the conduct is enumerated in Code § 19.2-306.1(A). *See Diaz-Urrutia*, 77 Va. App. at 191; *Delaune*, 76 Va. App. at 383.

Virginia courts have repeatedly looked to the conduct described in Code § 19.2-306.1 as the touchstone for evaluating whether a probationer has committed a technical violation.[6] In *Delaune*, the Supreme Court held that a condition requiring a probationer to be "drug free" was not distinct from the underlying technical conduct of "refrain[ing] from the use, possession, or distribution of controlled substances" under Code § 19.2-306.1(A)(vii). 302 Va. at 656. The Court noted that the "drug free" condition required the probationer to do no more than refrain from conduct expressly defined as a technical violation under Code § 19.2-306.1(A)(vii) and, therefore, her violation of that condition was a technical violation. *Id.* at 658-59.

By contrast, in *Thomas* we held that a defendant's alcohol use violated a "special condition" requiring him to abstain from drinking "any alcohol." 77 Va. App. at 626. Code § 19.2-306.1(A)(vi), limits technical violations to alcohol use that "'disrupts or interferes with' the probationer's 'employment or orderly conduct.'" *Id.* Thus, the defendant's probation violation "was not a technical violation under subsection (A)(vi)," because the sentencing order's alcohol condition was more restrictive than Code § 19.2-306.1(A)(vi). *Id.*

Most recently, in *Burford* we considered whether a defendant committed a technical violation when he failed to complete a recommended psychosexual evaluation. 78 Va. App. at 182. There, the sentencing order required the defendant to "complete a [community-based probation] mental health evaluation" and to "follow all recommendations." *Id.* at 183. After undergoing the court-ordered mental health evaluation, Burford's evaluator "determined that he [also] needed to complete a psychosexual evaluation." *Id.* at 176 (alteration in original). This psychosexual evaluation was not part of the original court order, and Burford refused to complete it. *Id.* at 177. The trial court found that Burford thus violated a special condition of his suspended sentence.

---

[6] The dissent relies on *Browne v. Commonwealth*, No. 1373-21-4, 2023 Va. App. LEXIS 228 (Apr. 11, 2023), *vacated as moot*, 303 Va. 90 (2024) (order). *Browne* was vacated and thus is neither binding nor of precedential effect.

*Id.* at 178. We affirmed, holding that Burford's "noncompliance" was more than a mere technical violation of "failing to follow the instructions of probation." *Id.* at 182. Instead, Burford's "underlying conduct" constituted a "failure to follow the instructions of the court" that specifically ordered an evaluation. *Id.* at 183. The court further required Burford to "follow all recommendations," which implicitly included participating in subsequent treatment or evaluations. *Id.* These cases demonstrate that when analyzing whether a condition is a technical violation or non-technical special condition, the key inquiry is whether the violation conduct falls within the conduct enumerated in Code § 19.2-306.1(A).

### I. Sex Offender Counseling

Shifflett's obligation to complete sex offender counseling is a special condition of his suspended sentence and is not conduct underlying any of the technical violations listed in the statute. Therefore, by failing to complete sex offender counseling, he committed a non-technical violation of his suspended sentence, and the court was within its right to impose a term of active incarceration based on this violation. Code § 19.2-306.1(B).

We "assume that the General Assembly chose, with care, the words it used in enacting the statute, and we are bound by those words when we apply the statute." *Jordan v. Commonwealth*, 295 Va. 70, 75 (2018). And thus, we "may not construe the plain language of a statute 'in a manner that amounts to holding that the General Assembly meant to add a requirement to the statute that it did not actually express.'" *Commonwealth v. Amos*, 287 Va. 301, 307 (2014) (quoting *Vaughn, Inc. v. Beck*, 262 Va. 673, 679 (2001)). "To supply omissions [to a statutory scheme] transcends the judicial function." *Iselin v. United States*, 270 U.S. 245, 251 (1926).

Unlike in *Thomas* where the defendant's violation was included, although far more broadly, in the statutory list of technical violations, here, the conduct of enrollment in a licensed sex offender counseling or treatment program does not appear in any of the statutory technical violations or in the

standard conditions of probation supervision. And successful completion of "any screening, assessment, testing, treatment and/or education as directed by the probation officer" is similarly absent. Yet it is not the language that needs to be "identical," so long as "the probationer's proscribed 'underlying' conduct 'matches' the listed technical violation in the statute." *Thomas*, 77 Va. App. at 624. In Shifflett's case, it is impossible to say that failing to enroll in counseling or failing to complete a sex offender treatment program—explicitly authorized and mandated by the circuit court—is conduct that matches the conduct listed in one of the ten subsections of Code § 19.2-306.1(A). *See id.*; *Burford*, 78 Va. App. at 182. When a circuit court directs a sex offender to enroll in specific counseling or to complete treatment related to his or her offense, even if supervised by probation, and the sex offender defies the court's order, the offender is not guilty of a mere technical violation for failing to follow probation's instructions. Instead, the offender is guilty of violating a special condition that is a non-technical violation.

The circuit court must have the authority to delegate supervision of its special condition programs to probation without such supervision inherently becoming a technical violation.

To hold otherwise would impermissibly expand Code § 19.2-306.1(A)(v) to turn a violation of any condition required by the court that grants probation officers with discretion in supervision into a failure of the probationer to "follow the instructions of the probation officer." Under this logic, almost any special condition would be a technical violation, which would render Code § 19.2-306.1 meaningless. The General Assembly's inclusion of enumerated technical violations as well as Code § 19.2-306.1(B)'s non-technical exception would become superfluous. Therefore, "[t]he 'underlying conduct' that [Shifflett] committed was not the failure 'to follow the instructions of the probation officer,' but rather, the failure to follow the instructions of the court." *Burford*, 78 Va. App. at 183.

Shifflett attempts to argue that he did indeed enroll in sex offender counseling, but simply failed to complete it, as directed by his probation officer—culminating in a simple technical violation. The sentencing order, however, required Shifflett to enroll in sex offender counseling and to successfully complete treatment. The supervised probation condition requiring Shifflett to "*successfully* complete" treatment "as directed by the probation officer," and the counseling condition specifically requiring him to enroll in counseling with a licensed sex offender provider/counselor, must be read together. (Emphasis added). Alone, the counseling condition establishes only a general requirement—the enrollment in sex offender counseling. But, in accordance with the "well-recognized principle that a court order, . . . 'should be construed as a whole, thereby gathering meaning from its entirety and not from particular words, phrases or clauses,'" the condition should not be read in a vacuum and deprived of its context. *Lovell v. McGuire*, No. 1281-02-4, slip op. at 7 (Va. Ct. App. Mar. 18, 2003) (quoting *N. Va. Sav. & Loan Ass'n v. J.B. Kendall Co.*, 205 Va. 136, 142 (1964)). Instead, we must look to the preceding supervised probation condition to determine the means of achieving the court-ordered requirement. Therefore, the day-to-day administration and management of Shifflett's treatment—counseling being the form of sex offender treatment prescribed by the circuit court—is directed by his probation officer—as set out in the supervised probation condition—but the counseling condition is the basis for the court's requirement.[7] Thus, taken as a whole, the sentencing order required Shifflett to both enroll in and *successfully complete* sex offender counseling.

This interpretation is further supported by the rule that a court's order "should never be construed in a way that leads to absurd results." *Meeks v. Commonwealth*, 274 Va. 798, 802 (2007).

---

[7] Contrary to the dissent's conclusion, a court always retains authority and does not wash its hands of the responsibility to supervise the administration and logistics of a probationer's conditions. This also extends to providers, administrators, or clinicians appointed by the court to help in supervising the probationer's day-to-day requirements and needs.

In this context, to read the terms "enroll" and "complete" as distinct from one another would cause the order to be "internally inconsistent or otherwise incapable of operation." *Cook v. Commonwealth*, 268 Va. 111, 116 (2004). Therefore, and given this context, we interpret the court's use of "enroll" to require both enrollment in and successful completion of sex offender counseling.

Thus, Shifflett's failure to successfully complete sex offender counseling constituted a non-technical special condition violation, and the circuit court did not err in finding that Shifflett committed a non-technical violation of his suspended sentence.

## II. Community Service

Shifflett's required community service was a condition in his plea agreement and of his suspended sentence. Yet, Shifflett argues that his failure to complete the hours amounts to a failure to follow the probation officer's instruction, because he did not complete them in a location pre-approved by the probation officer. But community service, like sex offender counseling, is not underlying conduct that matches any of the ten technical violations enumerated by the General Assembly. *See* Code § 19.2-306.1(A). Nor is it a part of the standard Conditions 2 through 11 of the Conditions of Probation Supervision that Code § 19.2-306.1(A) mirrors. *See* Va. Crim. Sent'g Comm'n, *supra*, app. 1-A at 97. Thus, Shifflett's failure to complete community service was not a "technical violation."

The decision to require community service is within the sole province of the court, not the probation officer. *See* Code § 19.2-303 ("After conviction, . . . the *court* may suspend imposition of [a] sentence or suspend the sentence in whole or part and in addition may place the defendant on probation under such conditions as the court shall determine, including . . . to perform community service, . . . under terms and conditions which shall be entered in writing by the *court*." (emphasis added)). "[T]he circuit court's power to impose conditions of probation is not unlimited, and circuit

- 14 -

courts may not delegate to probation officers responsibilities that are the sole province of the circuit courts." *Fazili*, 71 Va. App. at 254. Unless a statute states otherwise, however, "the circuit court may set the bounds of the condition and delegate to the probation office the duty to set the details of those conditions." *Id.*; *see also Miller v. Commonwealth*, 25 Va. App. 727, 745 (1997) (explaining that probation officers are "statutorily required to supervise, assist, and provide a probationer with a statement of the conditions of his release from confinement," and are "charged by law with defining a probationer's permissible or impermissible conduct"). "Essentially, while the circuit court sets the terms and conditions of probation, probation officers enforce those terms and conditions and exercise discretion in doing so." *Fazili*, 71 Va. App. at 255. Thus, Shifflett's probation officer was permitted to fashion the means and details of the court-ordered community service, but the power to impose the condition to complete the community service stayed in the hands of the court. Shifflett did not merely fail to follow his probation officer's instructions when he failed to seek approval for his 161 remaining hours of community service; instead, he failed to comply with the court's non-technical special condition.

CONCLUSION

For the above reasons, the circuit court correctly found that by failing to complete sex offender counseling and community service—violation conduct not matching the technical violations under Code § 19.2-306.1—Shifflett violated non-technical special conditions of his probation. Therefore, the circuit court did not err in revoking and imposing more than 14 days of Shifflett's previously suspended sentence. Accordingly, we affirm the circuit court's judgment.

*Affirmed*.

Causey, J., concurring in part, and dissenting in part.

I concur with the majority that the community service violation was a non-technical violation. I agree with the dissent that a narrower interpretation of the sentencing order which distinguishes between the requirements to enroll in counseling and to complete sex offender treatment is vital to our understanding of the technical vs. non-technical analysis. Because the majority attempts to rewrite the sentencing order by stating that Shifflett had a court-ordered obligation to complete sex offender counseling/treatment, and limits the circuit court judge's discretionary authority, and adds mandatory obligations to probation officers, and because counseling of mental/drug/behavioral/sexual abnormalities is not a one-size-fit-all program that probation officers specialize/supervise, I respectfully dissent.

First, I must address a fundamental shift in the majority's interpretation of the probation conditions from the circuit court sentencing order. When the circuit court issued its October 13, 2020 sentencing order, Shifflett's supervised sentence conditions had two separate and distinct sections, *Counseling* and *Supervised Probation*. The circuit court found that Shifflett had failed "to follow special conditions/instructions . . . to complete 200 hours of community service and complete sex offender treatment." Although the circuit court erred in holding that failing to complete 200 hours of community service was a violation of a special condition ("non-technical"), we cannot ignore the fact that a panel of this court and the circuit court's holding focused only on Shifflett's failure to *complete* sex offender *treatment; not counseling.*

Many courts have recognized the wide spectrum of individual rehabilitative needs through the creation of various mental, drug, behavioral (which includes sex offenders), and Veteran dockets/courts. These specialty courts are increasing throughout the Commonwealth of Virginia and the United States. Participation is limited. Circuit court and specialty court judges at their discretion along with a team of individuals have implemented various combinations of

requirements that directly relate to the probationer's individual need. As here, the judge had discretion in setting the terms of Shifflett's individual needs and unique probation. These special conditions ordered by the judge were at the judge's discretion without other hidden consequences until today. Now, these special conditions "must" only be supervised by probation officers and can be linked to other (not special) conditions, which may trigger a non-technical probation violation. All administration and logistics of conditions are now added obligations of only probation officers. All providers, administrators, servicers, and clinicians working with specialty courts must now report to probation officers instead of directly to the court. I respectfully disagree. This should not be a mandatory requirement and it dilutes the intent of Code § 19.2-306.1.

The majority, with their opinion, makes it mandatory that all probation officers supervise the administration and logistics of conditions articulated at sentencing as "special conditions." The majority begins by saying "[c]ircuit court judges *must* rely upon probation officers to supervise the administration and logistics of conditions of probation articulated at sentencing as 'special conditions.'" *Supra* at 1 (emphasis added). Our Supreme Court and this Court have "generally read the *shall* as directory (*should* or *will*), not mandatory (*must*), unless the context suggests otherwise." *Henderson v. Commonwealth*, 77 Va. App. 250, 254 (2023). But, it is now mandatory (*must*) that circuit courts have no discretion in the administration or supervision in the ordering of "special conditions" or in the ordering of any probation. Everything is now a *must* obligation of probation officers. The majority's limitation of the statute nullifies and significantly changes the entire purpose of the statute and intent of the General Assembly. *See Johnson v. Commonwealth*, 53 Va. App. 608, 612 (2009). Circuit court judges no longer have discretion over specialized conditions and probation in Virginia has now changed to only being supervised and administered by probation officers.

Clearly written in Shifflett's major violation report is a violation for failure to complete sex offender treatment not counseling. The circuit court's sentencing order mandated "counseling . . . with a licensed sex offender provider/counselor." The court did not order sex offender treatment. The majority states that, "[t]he sentencing order, however, required Shifflett to enroll in sex offender counseling and to successfully complete treatment." *Supra* at 13. This requirement is not stated in the court's order, the major violation report, or any part of the record in this case. In fact, the phrase "sex offender treatment" does not appear in the court's sentencing order at all. Neither the court nor the probation officer required Shifflett to *complete counseling*. The order only requires enrollment. Further, the judges of this Court agree that there was no specific order from the court regarding any specific kind of treatment. Additionally, there is nothing in the sentencing order, major violation report, or the record that defines or suggests that counseling and treatment are interchangeable words that mean the same thing or somehow are collectively together for the purposes of probation. Nor does the order combine the terms or make one dependent on the other. Thus, the majority's holding challenges all probation violations by adding presumed requirements. This holding creates law that encourages that citizens of this Commonwealth be held in violation of conditions never ordered by the court.

All circuit court probation orders have the same preprinted form boilerplate language. While I agree that the boilerplate language does list "any screening, assessment, testing, treatment and/or education as directed by the probation officer," it does so separate, apart, and under a different section entitled supervised probation. Predominantly, the supervised probation boilerplate language section is the technical violation section of Code § 19.2-306.1(A) that "reflect ten of the eleven specific requirements imposed on all probationers supervised by the Department of Corrections (DOC)." *Thomas v. Commonwealth*, 77 Va. App. 613, 621 (2023).

- 18 -

These conditions are at the direction and discretion of the probation officer. They are not "must" requirements of any sentencing order or probation. In other words, if any specific screens, test, treatments, or education is directed to be completed, it is solely the probation officer's choice and thus a technical violation. Here, the circuit court judge is unaware of any "sex offender treatment" requirement until it is listed in the major violations report by the probation officer as a violation of the probation officer's conditions.

The report does not state that treatment is a special condition imposed by the court. Nevertheless, the majority suggests reading the judge ordered conditions and boilerplate language together because reading it separately would produce an absurd result. I suggest that reading it together produces the most absurd result that circumvents the intent of Code § 19.2-306.1. This absurd result would not only be aimed at treatment as the majority suggests; it would be intended for any incomplete screen, assessment, testing, treatment and/or education as directed by the probation officer. Thus, making any of the listed technical violations and Code § 19.2-306.1(A) meaningless by giving probation officers additional authority to add to judge-ordered special conditions. Although here, only *treatment* is cherry picked from the list, the majority's holding makes any of those additional words non-technical violations. This (absurd) result gives probation officers authority to convert any and all probation officer instructions, (technical violation) such as treatment, into special conditions, (non-technical violations) such as counseling, without notice to the probationer and without the special condition ever being ordered. This result could lead to years of unjustified incarceration.

Shifflett was enrolled in both counseling as ordered by the circuit court and specified— sex offender—treatment as instructed by the probation officer. The major violation report in the record only mentions specified sex offender treatment, no other screening, assessment, testing, nor education was listed most importantly, not a combination of counseling and treatment. The

- 19 -

majority continues to conflate the words counseling and sex offender treatment by stating that the court required Shifflett to complete sex offender counseling and not sex offender treatment. Evidenced in the record, the circuit court's order requiring enrollment in counseling does not include completion of both counseling and treatment.

The majority's misinterpretation of the circuit court's order and major violation report would improperly limit the applicability of Code § 19.2-306.1(A)(v) by limiting the purposefully broad language, "follow the instructions of the probation officer, be truthful and cooperative, and report as instructed." The majority contends that where a circuit court orders enrollment in specific counseling, (even if not supervised by probation) and a probation officer instructs treatment, the failure to comply with only the probation officer's instruction is not applicable to Code § 19.2-306.1(A)(v) but is rather a non-technical violation of a special condition. The majority errs in its interpretation of the statute by limiting the purposefully broad language because the purpose of the statute is to put limitations on the ability of circuit courts to impose active sentences. This statutory language is meant to encompass a wide range of behaviors; if not, the legislature would have included language to limit its applicability itself. When interpreting a statute, courts "are required to 'ascertain and give effect to the intention of the legislature,' which is usually self-evident from the statutory language." *Va. Polytechnic Inst. & State Univ. v. Interactive Return Serv.*, 271 Va. 304, 309 (2006) (quoting *Chase v. DaimlerChrysler Corp.*, 266 Va. 544, 547 (2003)).

The majority references the major violation report, wherein they state that Shifflett began counseling treatment in December 2020, from which he was "unsuccessfully discharged" due to his alleged behavior. This portion of the report was discussing Shifflett's failure to successfully complete treatment, not counseling. Nowhere in the major violation report does Officer Moss mention or violate Shifflett on his counseling requirement. Thus, no notice of the counseling

violation was ever given to Shifflett. Thus, to hold him in violation of the counseling condition is unwarranted because it was never a subject of any violation. The major violation report, drafted by Officer Moss, only violates Shifflett on treatment and community service. The majority goes on to state that Shifflett pled guilty to the violations in Moss's report, and that by entering an *Alford* plea and stipulating to the facts of that report, Shifflett is barred and has waived raising sufficiency of the evidence arguments. Clearly those stipulations and waivers are only to the things listed in the report, which did not contain anything regarding counseling. While the majority simultaneously asserts that he is in violation of his counseling requirement, it was not listed in the report and thus is not waived nor stipulated to in the record. There is no mention of a violation of Shifflett's counseling requirement in the major violation report. Therefore, I would hold that his *Alford* plea regarding the report does not bar him from raising any arguments regarding the special condition of counseling. I would hold Shifflett never entered a plea regarding the special condition of counseling. However, to the extent that the majority is willing to go outside the scope of the record and find Shifflett in violation of his counseling requirement—a condition which neither the court nor the major violation report intended—he is not barred from arguing the sufficiency of the evidence to convict him of the counseling violation. Accordingly, I would remand this case to the circuit court with direction to determine whether Shifflett violated his sentencing order's counseling requirement.

Circuit courts speak through their orders and if the circuit court wanted to require Shifflett to complete a counseling program and a sex offender treatment program, the court could have ordered both. However, the court did not; the court only ordered *enrollment* in counseling.

Therefore, counseling and sex offender treatment should be treated as distinct from one another[8] as outlined by the circuit court. Further, the majority's substitution of the term "counseling" for "treatment" throughout their opinion is an attempt to align the facts of the case with their interpretation of the law. This revision does not remedy the error in their interpretation, it alters the order explicitly given by the circuit court. This Court does not have the ability to rewrite the words of the circuit court's order or the major violation report. We must take the record as the record.

Here, the court in its discretion chose to allow Shifflett to choose his sex offender counselor, we know this because it is unquestionably stated in the counseling provision of the sentencing order in a separate and distinct section and not listed with those requirements designated under "Supervised Probation." The only mention of the words "complete" and "treatment" in the order came from the boilerplate language.

The use of boilerplate language that contains standardized language for *all* probationers is clearly not a special condition imposed on *all* probationers by the court. Accordingly, they were not meant to be read or added to any conditions, as the majority suggests. However, the

---

[8] Judge Chaney's dissent in the case at bar walks through the difference in treatment and counseling according to Black's Law Dictionary, highlighting how the terms are distinct and not synonymous:

> "Treatment" and "counseling" are terms describing separate things. "Treatment" denotes a specific program, often including steps, goals, and usually a set end date. *See Treat (7), (8)*, *Black's Law Dictionary* (11th ed. 2019) ("To care for (a medical patient); to try to cure the illness or injury . . . to subject (a disease, debility, etc.) to a regimen of medicine, exercise, etc."). On the other hand, "counseling" is a broad therapeutic concept that does *not* necessarily contemplate a set end date. *See Counseling (2)*, *Black's Law Dictionary*, *supra* ("The furnishing of advice or guidance, esp. by a knowledgeable person such as a life coach, a psychologist, or a psychotherapist.").

*Infra* at 30.

majority's mandate means that every probationer is subject to non-technical violations if any of the conditions in Code § 19.2-306.1(A) can be remotely tied to any specified special condition of the court's order. The majority opinion establishes that these read together special conditions are not required to be part of the court's order and no notice is required to be given to the probationer. It is presumed. It was Shifflett's probation officer, not the court, that required him to attend and successfully complete a "sex offender treatment" program. Failing to complete a treatment program was a non-technical violation for failing to follow the instructions of the probation officer since the probation officer is the only one who instructed Shifflett to complete a "sex offender" treatment program.

The court specifically ordered Shifflett to enroll in counseling, which he did. Of the relevant provisions, enrolling in counseling was the only court-ordered provision ("special condition") that Shifflett could have violated that would have been deemed a non-technical violation, other than not completing 200 hours of community service which was also court-ordered. The provision to complete any treatment as directed by the probation officer came from boilerplate language given to all probationers by the probation officers, not the court. Thus, failing to complete treatment not counseling is a technical violation. Moreover, to hold Shifflett in violation of terms neither in the sentencing order nor the major violation report is unjust. Circuit court judges should have the discretion as to who supervises or administers logistic conditions of articulated special conditions. Especially when those conditions involve mental, drug, behavioral, sexual abnormalities, and Veterans ("specialty courts"). Probation officers' authority and violations should continue to be limited as directed by Code § 19.2-306.1 and not extended to mandated supervision of administration and logistics of special conditions. For these reasons, I respectfully dissent. I would reverse the circuit court's judgment and remand for further proceedings.

Chaney, J., dissenting.

The majority's holding today chisels away at conduct covered by the sentencing protections in Code § 19.2-306.1 and precedent applying those protections by allowing courts to craft sentencing orders that transform otherwise technical violations into non-technical ones. The majority concludes that the sentencing order here imposed "non-technical special" conditions by requiring Shifflett to perform certain conduct not listed under Code § 19.2-306.1 and delegating authority to his probation officer merely to supervise those conditions. The majority reasons that in that circumstance, Shifflett's disregard of his probation officer's directives to complete sex offender counseling and to obtain preapproval for his community service hours constituted a failure to follow the court's order, not the probation officer's instructions. By so concluding, the majority has misconstrued the sentencing order and short-circuited the standard set out in *Delaune.*

In my view, our precedent compels our Court to conclude that a condition cannot be "special" or "non-technical" where, as here, the sentencing order gives the probation officer authority to remove the probationer's obligation to perform or refrain from the specific conduct forming the basis of the violation—*even if* that conduct, on its face, does not match the conduct specified under Code § 19.2-306.1. This is because, in that circumstance, the probationer's underlying violation conduct is a failure to follow the probation officer's instructions rather than the court's order, as specified in Code § 19.2-306.1(A)(v).

When performance of a probation condition is specified by a court order and is not created by a probation officer, that condition is not the probation officer's "instruction" and is therefore "non-technical." However, when the performance of a probation condition can be imposed or relieved by the probation officer, this condition is an "instruction" of the probation officer under Code § 19.2-306.1(A)(v). The statute and our precedent make a probation

- 24 -

condition specified by a probation officer this way "technical."  Accordingly, I would hold that

Shifflett's failure to complete sex offender treatment and obtain his probation officer's prior

approval of the locations where he performed his community service were failures to follow only

the probation officer's instructions and, thus, were technical violations under Code

§ 19.2-306.1(A)(v).  Therefore, I respectfully dissent.

ANALYSIS

I. Conduct not specified in a sentencing order, of which probation officers may impose or relieve
performance at their discretion, are the probation officer's "instructions" under Code
§ 19.2-306.1(A)(v).

The majority short-circuits *Delaune* by only comparing the terms in the sentencing order to

Code § 19.2-306.1(A) to determine if a violation is non-technical.  *See supra* at 11-12 ("[H]ere, the

conduct of enrollment in a licensed sex offender counseling or treatment program does not appear in

any of the statutory technical violations or in the standard conditions of probation supervision.").

The majority misconstrues the central holding in *Delaune* and its related cases.  Those cases require

us to determine if a probationer's underlying conduct matches the conduct described by Code

§ 19.2-306.1(A)—not merely to see if the language of a sentencing order superficially matches the

language in Code § 19.2-306.1(A).  *See Commonwealth v. Delaune*, 302 Va. 644, 652 (2023) ("The

Court of Appeals explained that Code § 19.2-306.1 focuses on the underlying violation conduct

itself, not the particular language or label a trial court may have used in imposing a condition of

probation." (quotation marks omitted)).  The conduct described by Code § 19.2-306.1(A), not the

label given a probation condition, determines that condition's technical character.  *See, e.g.*,

*Delaune v. Commonwealth*, 76 Va. App. 372, 383 (2023) ("The statute focuses on the underlying

violation conduct itself, not the particular language or label a trial court may have used in imposing

a condition of probation.").

- 25 -

In *Delaune*, this Court held that a probationer's failure to stay "drug-free" during the probationary period was a technical violation because it matched conduct specified in Code § 19.2-306.1(A)(iv), which defines failure to "refrain from the use . . . of controlled substances" as technical. *Id.* at 383. Similarly, this Court also held that the probationer's abscondment from probation was also technical because it matched conduct described in Code § 19.2-306.1(A)(x), which defines failure to "maintain contact with the probation officer whereby [the probationer's] whereabouts are no longer known to the probation officer" as a technical violation. *Id.* at 382.

By contrast, this Court found in *Thomas v. Commonwealth*, 77 Va. App. 613, 625-26 (2023), that the probationer's underlying conduct was a non-technical violation of probation when he disobeyed the court's order not to "consume *any alcohol*." We explained that the conduct underlying the violation did not match the conduct described by Code § 19.2-306.1(A)—which made the condition *not to consume alcohol "to the extent that it disrupts or interferes with [your] employment or orderly conduct"* a technical condition. *Id.* at 626 (emphasis added) (quoting Code § 19.2-306.1(A)(vi)). This was a non-technical violation because the requirement imposed by the court—total abstinence—was more restrictive than the conduct specified in Code § 19.2-306.1(A) and, therefore, did not match that conduct. *Id.*

Similarly, in *Burford v. Commonwealth*, 78 Va. App. 170 (2023), the probationer's underlying conduct, failing to complete a psychosexual evaluation, did not match the conduct specified by Code § 19.2-306.1(A)(v) to "follow the instructions of the probation officer." *Id.* at 183-84 (quoting Code § 19.2-306.1(A)(v)). Burford's failure to follow the evaluator's recommendation was a failure to follow the court's order, not the probation officer's instructions. *Id.* at 183-84 ("Violating the district court's instruction to 'follow all recommendations' was explicitly tied to the district court's requirement to complete the mental health evaluation."). Given the explicit language in the sentencing order—"complete 'a CBP referral for mental health

eval[uation], [and to] follow all recommendations'"—the probation officer could not relieve the defendant of his obligation to complete the recommended psychosexual evaluation. *Id.* (alterations in original).

Thus, *Delaune*, *Thomas*, and *Burford* illustrate the principle that we compare a probationer's underlying conduct to the conduct described in Code § 19.2-306.1(A) to determine whether a violation is non-technical. We are not to merely conduct a side-by-side comparison of the sentencing order's wording to the statute's wording, as the majority does here.

The majority claims that defining "instructions" with respect to whether a probation officer has the ability to command or relieve the performance of a condition would result in any condition directly imposed by a court being characterized as a technical condition if the court delegates supervision of the condition to a probation officer:

> To hold otherwise would impermissibly expand Code
> § 19.2-306.1(A)(v) to turn a violation of any condition required by
> the court that grants probation officers with discretion in supervision
> into a failure of the probationer to "follow the instructions of the
> probation officer." Under this logic, almost any special condition
> would be a technical violation, which would render Code
> § 19.2-306.1 meaningless.

*Supra* at 12. The majority, therefore, advocates restricting technical conditions to the conduct explicitly listed in Code § 19.2-306(A). *See supra* at 12 ("[I]t is impossible to say that failing to enroll in counseling or failing to complete a sex offender treatment program . . . is conduct that matches the conduct listed in one of the ten subsections of Code § 19.2-306.1(A).").

On the contrary, *Delaune* offers a straightforward test for determining whether a probation condition is a direct court order or a probation officer's instruction. Where a probation officer can impose or relieve an obligation to perform certain conduct, failure to perform that conduct is necessarily a failure to follow the probation officer's instructions—regardless of whether the conduct prescribed is explicitly listed in Code § 19.2-306.1(A). Accordingly, a probationer's

- 27 -

violation of such a condition would constitute a failure to follow the probation officer's instructions under Code § 19.2-306.1(A)(v).

The majority also proposes that, where a sentencing order delegates authority to a probation officer to supervise a court-ordered requirement, then any additional parameters imposed by the probation officer should be treated as extensions of the direct court order rather than the probation officer's instructions and, therefore, a probationer's violation of these parameters is non-technical in character. *See supra* at 15 ("Shifflett's probation officer was permitted to fashion the means and details of the court-ordered community service, but the power to impose the condition to complete the community service stayed in the hands of the court."). This proposal directly contradicts the principle set forth in *Delaune* that a probationer's violation of a court-ordered requirement is technical where it constitutes a failure to follow the probation officer's instructions rather than the court's orders. To be clear, when a probation officer imposes a parameter not found in the sentencing order and for which the probation officer may compel or relieve performance, such a parameter is a probation officer's instruction under Code § 19.2-306.1(A)(v).

We addressed this scenario in *Browne v. Commonwealth*, No. 1373-21-4, 2023 Va. App. LEXIS 228 (Apr. 11, 2023), *vacated as moot*, 303 Va. 90 (2024) (order),[9] where this Court found that a probationer's failure to engage in drug counseling was the failure to follow the instructions of a probation officer when Browne needed to enroll in drug counseling "*only if* instructed to do so by

---

[9] The Supreme Court of Virginia recently vacated this opinion as moot on the basis that Browne had "already served the period of active incarceration imposed by the circuit court." *Browne*, 303 Va. at 94. While *Browne* is not binding, the analysis contained therein is consistent with our legal precedent and therefore still useful for illustrative purposes. *See Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 568 n.7 (2018) ("Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." (quoting *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012))); *see also* Rule 5A:1(f).

his probation officer." *Id.*, slip op. at 9, 2023 Va. App. LEXIS 228, at *13 (emphasis added).

There, Browne's sentencing order required him "to comply with any evaluations, treatments or

counseling as recommended by the probation officer to the satisfaction of the probation officer."

*Id.*, slip op. at 7-8, 2023 Va. App. LEXIS 228, at *10. The Court found Browne's sentencing order

"did not unconditionally require Browne to enroll in drug counseling as a condition of his probation

and suspended sentence." *Id.*, slip op. at 9, 2023 Va. App. LEXIS 228, at *13. Rather, Browne

only had to attend counseling "if instructed to do so by his probation officer." *Id.* The sentencing

order allowed the probation officer to impose a requirement to perform or relieve Browne of the

performance of the conduct that later formed the basis of Browne's violation. *Id.* Therefore,

Browne's failure to engage in drug counseling "if instructed to do so by his probation officer," as

noted in the sentencing order, was a failure to follow the probation officer's instruction because the

underlying violation conduct matched the statute, although such conduct is not explicitly listed in

Code § 19.2-306.1(A). *See id.*

## II. Shifflett's failures to complete sex offender treatment and community service were technical violations under Code § 19.2-306.1(A)(v).

Whether underlying conduct falls within the terms of a statute is a question of statutory

interpretation—a legal question. *E.g.*, *Walker v. Commonwealth*, 78 Va. App. 52, 64-65 (2023).

We review legal questions de novo. *Id.*[10]

_____

[10] The majority asserts that Shifflett has admitted to the probation violations. *Supra* at 4 & 4 n.3. However, the record does not contain such a concession. *See* R. 151 ("[Def. Atty.:] I think I can argue that these are technical violations . . . I think the Commonwealth can well argue that it is a major violation."); R. 153 ("[Def. Atty.:] And so what I'm going to ultimately ask the Court do is find that he is in violation with a nolo contendere."); R. 175 ("Def. Atty.:] [Shifflett] hasn't followed her advice or sought her advice. It's really a violation, a technical violation . . . I would argue that [the sex offender counseling matter] is a technical violation."). Rather than concede the issue, Shifflett assumed a violation occurred so that he could argue their technical nature, or at most decided not to contest the violations. Shifflett's assumption of the violation was prompted by the Commonwealth's concessions that Shifflett's failure to complete the

A. *Completing sex offender treatment was instructed by Shifflett's probation officer, not ordered by the court.*

1. The majority's construction of "treatment" and "counseling" makes those terms synonymous, implying that there is no distinction between those terms.

The majority often conflates the concepts of sex offender "treatment" and "counseling," although the terms are distinct and not synonymous. "Treatment" and "counseling" are terms describing separate things. "Treatment" denotes a specific program, often including steps, goals, and usually a set end date. *See Treat (7), (8)*, *Black's Law Dictionary* (11th ed. 2019) ("To care for (a medical patient); to try to cure the illness or injury . . . to subject (a disease, debility, etc.) to a regimen of medicine, exercise, etc."). On the other hand, "counseling" is a broad therapeutic concept that does *not* necessarily contemplate a set end date. *See Counseling (2)*, Black's Law Dictionary, *supra* ("The furnishing of advice or guidance, esp. by a knowledgeable person such as a life coach, a psychologist, or a psychotherapist.").

The trial court treated sex offender "treatment" and "counseling" as distinct and different probation conditions, as evident in the sentencing order. Under the order's listed "Suspended Sentence Conditions" section, the provisions related to treatment and counseling are ordered separately in conditions. In the section paragraph labeled "Counseling," the court ordered, "The defendant shall immediately enroll in counseling after this sentencing date with a licensed sex offender provider/counselor, relating to his sexual conduct and matter associated therewith." R. 106. However, in a separate section paragraph labeled "Supervised Probation," the court ordered, "The defendant shall comply with all the rules and requirements set by the Probation Officer" and "The defendant shall successfully complete any screening, assessment, testing, treatment, and/or education as directed by the probation officer." R. 106. To "immediately enroll in

---

community service hours at a preapproved location was a failure to follow the probation officer's instructions.

counseling" and "successfully complete any . . . treatment . . . as directed by the probation officer" are separate and distinct conditions in the sentencing order, wherein the plain language of the order makes clear that if the probation officer directs Shifflett to any treatment he is required to complete it successfully.

It is noteworthy that the court's use of "as directed by the probation officer" is significant because the court chose not to include the phrase in its subsequent revocation order. In the revocation order under the listed "Suspended Sentence Conditions" section, in the "Supervised Probation" paragraph, the court order used the exact language to order treatment but removed the "by the probation officer" phrase and added the treatment to be completed is for substance abuse. Therefore, the court only ordered, "The defendant shall successfully complete any *substance abuse* screening, assessment, testing, treatment, and/or education *as directed*." R. 142 (emphases added). This distinction between treatment and counseling notwithstanding, the majority seemingly conflates these terms:

- "[T]he day-to-day administration and management of Shifflett's treatment—counseling being the form of sex offender treatment prescribed by the circuit court—is directed by his probation officer." *Supra* at 13.

- "Shifflett's obligation to complete sex offender counseling is a special condition of his suspended sentence." *Supra* at 11.

- "The sentencing order . . . required Shifflett to enroll in sex offender counseling and to successfully complete treatment." *Supra* at 13.

The majority contends that the requirement to "successfully complete any . . . treatment . . . as directed by the probation officer" and "enroll in counseling" should be read together to govern the same conduct. *Supra* at 13-14. Thus, the majority incorrectly treats "counseling" and "treatment" as synonymous conditions and attempts to transpose one requirement for the other, even though they are distinct and treated as separate conditions in the court's order.

- 31 -

Even accepting the majority's framing that the "completion" requirement of "any . . . treatment . . . as directed by the probation officer" can be transposed to the "counseling" condition, the court sentencing order still makes "successful completion" the instruction of Shifflett's probation officer. Whether Shifflett needed to complete counseling was left to the "direct[ion] of [his] probation officer." This is, by definition, his probation officer's instruction. *See Direction (4)*, *Black's Law Dictionary*, *supra* ("An order; an *instruction* on how to proceed." (emphasis added)).

2. Shifflett complied with the court's order to "immediately enroll in" sex offender counseling but failed to follow his probation officer's instruction to "successfully complete" sex offender treatment "as directed by the probation officer."

The sentencing order did not require Shifflett to complete sex offender counseling. Instead, it specified that Shifflett had to "immediately enroll in counseling after this sentencing date with a licensed sex offender provider/counselor, relating to his sexual conduct and matters associated therewith." R. 106. Thus, the order required Shifflett to "immediately enroll" in sex offender counseling, which he did. The order said nothing about completing this counseling.

In a separate subsection designated "Supervised Probation," the order also required Shifflett to "successfully complete any screening, assessment, testing, *treatment* and/or education *as directed by the probation officer*." R. 106 (emphases added). The order did not specify enrollment into treatment. However, if the probation officer directed any treatment, Shifflett was required to successfully complete the treatment program. *Compare United States v. Miller*, 341 F. App'x 931, 933 (4th Cir. 2009) (holding condition requiring the defendant to participate "in a program of testing of mental health treatment *as directed by the probation officer*" allowed the probation officer to determine whether Miller had to perform "undesignated mental health testing" (emphasis added)); *see also United States v. Peterson*, 248 F.3d 79, 84-85 (2d Cir. 2001) (holding that a condition requiring a probationer "to enroll, attend and participate in mental health intervention specifically designed for the treatment of sexual predators *as directed by the U.S. Probation Office*" gave the

probation officer authority to determine whether the defendant had to participate in the program at all (emphasis added)).

Thus, contrary to the majority's position, the sentencing order did not require Shifflett's probation officer merely to supervise his completion of a sex offender treatment program explicitly ordered by the sentencing court. Rather, it gave the probation officer the authority to determine what, if any, treatment program Shifflett needed to complete. If the probation officer decided that no sex offender treatment program was necessary, Shifflett did not need to complete one. Accordingly, any requirement to complete a sex offender treatment program necessarily came from the probation officer, not the sentencing court. *Cf. Burford*, 78 Va. App. at 183 ("The 'underlying conduct' that Burford committed was not the failure 'to follow the instructions of the probation officer,' but rather, the failure to follow the instructions of the court.").

Unable to identify any language in the sentencing order specifying otherwise, the majority resorts to implication to arrive at its conclusion. The majority insists that we read the requirement to "enroll" in counseling as implicitly containing a requirement to also "complete" counseling. This construction is compelled, they argue, by the absurdity doctrine. *Supra* at 13-14. The majority reads the separate provision in the order requiring Shifflett to "successfully complete any . . . treatment . . . as directed by the probation officer" as delegating authority to the probation officer to supervise "the day-to-day administration and management of Shifflett's treatment—counseling being the form of sex offender treatment prescribed by the circuit court." R. 106.

The problem with this reasoning is that treating "enroll in" and "complete" as separate requirements follows directly from what the court's order explicitly says and what the General Assembly has explicitly prescribed. Recontextualizing the court's order and calling an unambiguous statutory scheme "absurd" does not grant this Court authority to subvert the legislature's intention. *See, e.g.*, *Iselin v. United States*, 270 U.S. 245, 251 (1926) (supplying

"omissions [to a statutory scheme] transcends the judicial function"); *Verizon Va., LLC v. State Corp. Comm'n*, 302 Va. 467, 478 (2023) ("[O]ur interpretation does not turn on the public policy implications associated with the words chosen by the General Assembly because [t]he legislature is the author of public policy." (second alteration in original) (quotation and marks omitted)); *see also* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 237 (2012) ("The oddity or anomaly of certain consequences may be a perfectly valid reason for choosing one textually permissible interpretation over another, but it is no basis for disregarding or changing the text.").

Nothing in our case law supports the majority's conclusion that a requirement to "enroll" suggests a requirement to "complete" counseling—couched as that conclusion is in language indicating that this is a finding driven by the facts of this case. *See supra* at 14 ("Therefore, and given this context, we interpret the court's use of 'enroll' to require both enrollment in and successful completion of sex offender counseling."). Indeed, sentencing courts can order probationers to enroll in programs without also requiring completion. *See, e.g.*, *Peterson*, 248 F.3d at 81 (requiring defendant "to enroll, attend and *participate in* [sex offender] mental health intervention as directed by" probation (emphasis added)); *United States v. Shangreaux*, 897 F.2d 939, 942 (8th Cir. 1990) (ordering defendant "to enroll and participate in local alcohol care as instructed"). Conversely, when a court intends to order a probationer both to enroll in and complete a specific counseling or treatment program, the court will explicitly include it in the order. *See, e.g.*, *Zebbs v. Commonwealth*, 66 Va. App. 368, 371 (2016) (requiring probationer to "undergo *and complete* sex offender treatment" (emphasis added)).

Here, the sentencing order expressly required Shifflett "to immediately enroll" in sex offender counseling. Nothing in that language required Shifflett to complete sex offender counseling. To read the condition "to immediately enroll" in sex offender counseling as requiring

- 34 -

Shifflett to enroll in *and complete* sex offender counseling or treatment requires adding language to the order that it does not contain.

To be sure, "[i]n judicial orders, as in ordinary conversation, meaning can be clearly expressed and just as clearly implied." *English v. Quinn*, 76 Va. App. 80, 91-92 (2022) (quoting *Hill v. Commonwealth*, 301 Va. 222, 228 (2022)). Nevertheless, where the text of the order is plain and unambiguous, this Court presumes that the order "says what it means and means what it says," *id.* at 88 n.7 (quoting *Cornell v. Benedict*, 301 Va. 342, 349 (2022)), and we will not read an implied term into an order unless the order's express terms would "have no meaning without the implied" one, *see Hill*, 301 Va. at 229. Here, as noted, the sentencing order required Shifflett "to immediately enroll" in sex offender counseling. R. 106. That condition is self-contained and subjected Shifflett to sanctions if he failed to enroll in counseling immediately after sentencing. Grafting an additional phrase requiring Shifflett also to complete sex offender counseling is unnecessary to give meaning to that provision. *Id.*

The majority's reliance on the absurdity doctrine is misplaced. Nothing about our interpretation of the condition requiring Shifflett to enroll in sex offender counseling renders the sentencing order either "internally inconsistent" or "incapable of operation." *See supra* at 13-14. Rather, it simply precludes the court from treating Shifflett's failure to follow his probation officer's directive to complete sex offender treatment as a non-technical violation. Instead, it should be treated as a technical violation, with the prescribed sentencing consequences in Code § 19.2-306.1.

Conversely, the majority's interpretation of the order creates internal inconsistencies by rendering other language redundant. If the majority is correct that requiring a probationer "to enroll" in sex offender counseling implies requiring them "to complete" sex offender treatment, then the separate provision requiring Shifflett to "complete any . . . treatment . . . as directed by" his probation officer is superfluous. *See English*, 76 Va. App. at 91-92 (first quoting *Va. Elec. & Power*

- 35 -

*Co. v. State Corp. Comm'n*, 300 Va. 153, 163 (2021); and then quoting *Hill*, 301 Va. at 228) (applying canons of statutory and conversational interpretation to judicial orders).

In sum, the sentencing order, as written, did not require Shifflett to complete sex offender counseling and left it to Shifflett's probation officer to determine whether he had to complete any treatment whatsoever. Thus, the requirement that Shifflett complete sex offender treatment came not from the court but from his probation officer. Accordingly, Shifflett's failure to complete sex offender treatment was a failure to follow the instructions of his probation officer.

B. *Shifflett complied with the court's order requiring him to complete 200 hours of community service, "coordinated through adult probation," but failed to follow his probation officer's instruction for preapproval of the community service location.*

The court's sentencing order specified Shifflett was to complete 200 hours of community service in coordination with his probation officer. R. 106 ("The defendant shall comply with a plan of 200 hours of community service coordinated through adult probation.").

Shifflett's probation officer directed him to go to the fire station and report to the station chief. Shifflett completed 44 hours of community service at the fire station and then was directed by the station chief to complete the remaining hours at the station chief's local church. Shifflett completed 161 hours of community service at the church and then returned to the fire station to complete another 39 hours. By completing a total of 244 hours of community service, Shifflett has substantively complied with the direct court order to complete community service. However, the majority considers Shifflett's failure to obtain his probation officer's preapproval for the service performed at the church to be a non-technical violation.

The majority points out that Shifflett's probation officer "reported that she had instructed Shifflett to 'secure a community service site' and obtain her approval of the site before starting his service." *Supra* at 3. However, Shifflett's sentencing order does not mention a requirement for a location of service preapproval. Rather, the order only contained a requirement that Shifflett

complete "200 hours of community service coordinated through adult probation." R. 106. The preapproval requirement the majority relies upon appears for the first time in the record in the probation officer's major violation report where she reported that she had instructed Shifflett to "secure a community service site" and obtain her approval of the site before starting service. R. 111. The undisputed evidence is that Shifflett's probation officer directed him to go to the fire station and report to the fire chief, who supervised his community service. Shifflett's compliance with the court-ordered community service condition was complete when he reported to the fire chief as directed by his probation officer and then subsequently completed over 200 hours of service at the fire station and another location specified by the fire chief.

The technical character of the preapproval requirement is underscored by how the court treated it at Shifflett's revocation hearing. After finding Shifflett in violation the court said, "Maybe you can get the new probation officer to get that straightened out with you and go over and approve the ones you've done so far." R. 180. Thus, whether Shifflett had to obtain preapproval was a conduct requirement imposed by his probation officer. The probation officer, rather than the court, specified *how* Shifflett may comply with the court's community service requirement. The conduct underlying Shifflett's violation was his failure to get his probation officer's preapproval of the location of his community service—conduct specified not by the court, but by his probation officer. Those "specifications," then, were the probation officer's "instructions," and, therefore, fell under the conduct described in Code § 19.2-306.1(A)(v).

The majority counters that Shifflett's violation was non-technical because "community service, like sex offender counseling, is not underlying conduct that matches any of the ten technical violations enumerated by the General Assembly." *Supra* at 14 (citing Code § 19.2-306.1(A)). "Nor is it a part of the standard Conditions 2 through 11 of the Conditions of Probation Supervision that Code § 19.2-306.1(A) mirrors." *Id.* (citing Va. Crim. Sent'g Comm'n, Annual Report app. 1-A at

97 (2021)). As noted, however, whether a violation of a probation condition constitutes a technical violation does not depend on the Department of Corrections's determination of what violation conduct is "technical." Nor does it turn upon a superficial comparison of the terms and conditions included in a sentencing order and the conduct enumerated in Code § 19.2-306.1(A). Rather, the test is whether the probationer's underlying violation conduct matches the conduct set forth in that statute. Here, Shifflett's requirement to obtain preapproval for the location of his community service came solely from the probation officer. Shifflett's failure to do so was, therefore, not a violation of a court-ordered condition but a failure to follow the instructions of his probation officer.

The majority also emphasizes that because Code § 19.2-303 gives sentencing courts authority to impose community service as a condition of probation, the sentencing order gave Shifflett's probation officer authority "to fashion the means and details of the court-ordered community service, but the power to impose the condition to complete the community service stayed in the hands of the court." *Supra* at 15. The issue is not whether the court had the authority to impose community service as a condition of probation and delegate supervision of that condition to Shifflett's probation officer. It is, instead, whether Shifflett's failure to perform his community service hours in the manner prescribed by his probation officer was a failure to follow the trial court's order or merely the instructions of his probation officer. Statutory interpretation and our precedent compel the latter conclusion.

CONCLUSION

The sentencing order, Code § 19.2-306.1, and precedent require reversal of the trial court's judgment. The requirements that Shifflett complete sex offender counseling and obtain his probation officer's preapproval for community service were not specified in the sentencing order. Because Shifflett's failure to follow his probation officer's directives constitutes a failure to follow the probation officer's instructions rather than the trial court's order, his underlying violation

- 38 -

conduct was technical even if not explicitly described in Code § 19.2-306.1(A).  Thus, I respectfully

dissent.

UNPUBLISHED

*VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **10th** *day of* **October, 2023**.

Steve Wayne Shifflett, Appellant,

against Record No. 0675-22-2
Circuit Court No. CR19000342-01

Commonwealth of Virginia, Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On September 22, 2023 came the appellee, by the Attorney General of Virginia, and filed a petition requesting that the Court set aside the judgment rendered herein on September 12, 2023, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the petition for rehearing *en banc* is granted and the appeal of those issues is reinstated on the docket of this Court. The mandate previously entered herein is stayed pending the decision of the Court *en banc*.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b). An electronic version of each brief shall be filed with the Court and served on opposing counsel.[1]

A Copy,

Teste:

A. John Vollino, Clerk

*original order signed by a deputy clerk of the*
By: *Court of Appeals of Virginia at the direction*
*of the Court*

Deputy Clerk

---

[1] The guidelines for filing electronic briefs and appendices can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Ortiz, Chaney and Senior Judge Haley
Argued by videoconference


STEVE WAYNE SHIFFLETT

v.        Record No. 0675-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE JAMES W. HALEY, JR.
SEPTEMBER 12, 2023


FROM THE CIRCUIT COURT OF BUCKINGHAM COUNTY
J. Leyburn Mosby, Jr., Judge Designate

Kevin E. Calhoun (Charles C. Cosby, Jr., on brief), for appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Steve Wayne Shifflett appeals the circuit court's judgment revoking his previously

suspended sentence and imposing three months' active incarceration.  Shifflett contends that his

sentence violated Code § 19.2-306.1(C)'s prohibition on active incarceration for a "first technical

violation."  In this case, we consider whether Shifflett's failure to complete a sex offender treatment

program and 200 hours of community service at a location approved by his probation officer were

failures to "follow the instructions of the probation officer," which Code § 19.2-306.1(A)(v) defines

as a technical violation.  For the following reasons, we conclude that Shifflett committed only a first

technical violation, reverse the circuit court's judgment, and remand for further proceedings.

BACKGROUND

On July 13, 2020, the circuit court convicted Shifflett of aggravated sexual battery and,

on October 7, 2020, sentenced him to twenty years' incarceration.  The court suspended the

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

sentence conditioned on the successful completion of two years' supervised probation. The court ordered Shifflett to "follow all the rules and regulations of probation," "comply with all the rules and requirements set by the Probation Officer," "complete any screening, assessment, testing, treatment and/or education as directed by the probation officer," and "comply with a plan of 200 hours of community service coordinated through adult probation that shall all be completed by October 7, 2021." Additionally, the court required Shifflett to "register and reregister with the Sex Offender and Crimes Against Minors Registry" and to "immediately enroll in counseling" with "a licensed sex offender provider/counselor."

On October 9, 2020, Shifflett began supervised probation and signed a document agreeing to follow a general set of conditions of supervised probation, which included following his probation officer's instructions and being "truthful [and] cooperative." Additionally, Shifflett signed a set of "Sex Offender Special Instructions" that required him to "[a]ttend and successfully complete a Sex Offender Treatment Program approved by [his] supervising officer."

On November 30, 2021, Shifflett's probation officer, Rebecca Moss, reported that he had violated Condition 6 of the general conditions of probation by being "rude" and uncooperative during office appointments in November 2020 and April 2021. Shifflett also "began Sex Offender Treatment through the . . . Probation and Parole Office" in December 2020 but was "unsuccessfully discharged" about a year later due to his "lack of progress and therapy[-]interfering behavior," including Shifflett's refusal to accept "accountability" for his offense. In addition, Moss reported that she had instructed Shifflett to "secure a community service site" and obtain her permission to perform community service there before doing so. She later authorized Shifflett to perform community service at a fire department, where he completed 44 hours of community service by July 3, 2021. Shifflett also completed 161 hours of community service at a church in February 2021, but Moss "could not accept" those hours

- 2 -

because Shifflett did not get her permission to perform community service at the church. Moss discussed Shifflett's community service with Fire Chief Marcus, who supervised the 44 hours of approved community service Shifflett performed at the fire station. Chief Marcus confirmed that Shifflett had performed an additional 161 hours at a local church at his direction but did not provide the name of the church. Accordingly, Moss reported that Shifflett had "failed to complete his 200 hours of community service" by October 7, 2021. The circuit court issued a capias on December 7, 2021; Shifflett was arrested on December 18, 2021.

At the revocation hearing, the parties consented to applying recently amended and reenacted Code § 19.2-306(C) and newly enacted Code § 19.2-306.1 to the proceedings.[1] Shifflett conceded that he had violated the terms of his probation as Moss had reported but argued that the circuit court could not impose an active sentence. He maintained that his violations were "technical violations" under Code § 19.2-306.1(A) and the circuit court could not impose active incarceration for a "first technical violation" under Code § 19.2-306.1(C). The Commonwealth countered that Shifflett's failure to complete sex offender treatment and 200

---

[1] Amended and reenacted Code § 19.2-306(C) and newly enacted Code § 19.2-306.1, which took effect on July 1, 2021, do "not apply at a violation hearing when a probationer committed the relevant violations before the change in law and when revocation proceedings began before the statute took effect—absent agreement of the parties otherwise." *Delaune v. Commonwealth*, 76 Va. App. 372, 378 (2023) (citing *Green v. Commonwealth*, 75 Va. App. 69, 83 (2022)); *see* 2021 Va. Acts Spec. Sess. I ch. 538. The Commonwealth argues on brief that the new statutory framework did not apply to Shifflett's revocation hearing because some of his violation conduct preceded the statutes' effective date and the parties did not agree to apply the new laws. But at oral argument, the Commonwealth acknowledged that this Court has held that parties consented to applying the new laws to revocation proceedings where, as here, "the probation officer prepared guidelines relying on the [new statutory] framework" and the Commonwealth did not assert that the defendant's argument based on Code § 19.2-306.1 was "irrelevant or object to the use of Code § 19.2-306.1." *Heart v. Commonwealth*, 75 Va. App. 453, 463-64 (2022); *see also Delaune*, 76 Va. App. at 378 (same). (Oral argument at 11:50-14:45). We find that *Heart* and *Delaune* are controlling and that the parties consented to applying the new statutory framework at the revocation proceeding.

hours of community service at an approved location were "special condition" violations, allowing the circuit court to revoke Shifflett's entire sentence.[2]

The circuit court found that Shifflett had failed "to follow special conditions/instructions . . . to complete 200 hours of community service and complete sex offender treatment." The court emphasized that Shifflett was "disruptive with the probation officer" and "failed to follow his probation officer's regulations and instructions." Additionally, the court found that Shifflett's failure to complete community service hours at an approved location was the "minor part of [the] violation"[3] and the "major part" was Shifflett's "attitude" and failure to "cooperat[e] with [his] probation officer." Accordingly, the court revoked ten years of Shifflett's previously suspended sentence and resuspended nine years and nine months. Shifflett appeals.

ANALYSIS

"On appeal, '[w]e "view the evidence received at [a] revocation hearing in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable and legitimate inferences that may properly be drawn from it."'" *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022) (alterations in original) (quoting *Johnson v. Commonwealth*, 296 Va. 266, 274 (2018)). "[T]he trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Heart v. Commonwealth*, 75 Va. App. 453, 460 (2022) (quoting *Green*, 75 Va. App. at 76). "But 'an issue of statutory interpretation is a pure question of law which we review de novo.'" *Id.* (quoting *Green*, 75 Va. App. at 76).

---

[2] At the revocation hearing, the Commonwealth conceded that Shifflett's failure to complete the community service hours at a location approved by his probation officer was a failure to follow the probation officer's instructions. Nevertheless, the Commonwealth maintained that Shifflett's conduct was a "special condition" violation.

[3] The circuit court suggested Shifflett consult his probation officer after the revocation hearing to request that she retroactively approve the community service hours he had already completed. The court stated that if the probation officer refused the request, then Shifflett would "have to finish up" the balance of his community service hours.

"[W]hen construing a statute, our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Diaz-Urrutia v. Commonwealth*, 77 Va. App. 182, 190 (2023) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)). "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Heart*, 75 Va. App. at 466 (quoting *Cuccinelli*, 283 Va. at 425).

Code § 19.2-306(C) provides that "[i]f the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then the court may revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1." Code § 19.2-306.1 "creates two tiers of probation violations: (1) technical violations, based on a probationer's failure to do one of ten enumerated actions, and (2) non-technical violations." *Heart*, 75 Va. App. at 466.

The statute "contains specific limitations on sentencing that apply when a circuit court bases its revocation of a suspended sentence on what the statute refers to as certain 'technical violations' enumerated in the statute." *Green*, 75 Va. App. at 75 (citing Code § 19.2-306.1). For a "first technical violation," a court "shall not impose a sentence of a term of active incarceration." *Henthorne v. Commonwealth*, 76 Va. App. 60, 65 (2022) (quoting Code § 19.2-306.1(C)). "Multiple technical violations arising from a single course of conduct or a single incident or considered at the same revocation hearing shall not be considered separate technical violations for the purposes of sentencing pursuant to this section." Code § 19.2-306.1(A). But the sentencing limitations do not apply to non-technical violations, which include "convict[ion] of a criminal offense that was committed after the date of the suspension" and "violat[ion of] another condition other than (i) a technical violation [in subsection (A)] or (ii) a good conduct violation that did not result in a criminal conviction." *Thomas v.*

*Commonwealth*, 77 Va. App. 613, 622 (2023) (alterations in original) (quoting Code § 19.2-306.1(B)).

Shifflett contends that his failure to complete sex offender treatment and 200 hours of community service at an approved location were "technical violations." He asserts that the circuit court ordered him to "immediately enroll in counseling" with "a licensed sex offender provider/counselor" but delegated "authority and/or discretion to the probation officer" to determine whether he was required to complete a sex offender treatment program. Therefore, he maintains that he complied with the circuit court's directive to *enroll* in sex offender counseling but "failed to follow" the probation officer's instructions to *complete* a sex offender treatment program. Similarly, Shifflett argues that the circuit court required him to comply with his probation officer's plan to complete 200 hours of community service by October 7, 2021. He contends that he completed the required number of community service hours before the October 2021 deadline, but did not do so at a location approved by his probation officer. Accordingly, Shifflett asserts that each violation amounted to a failure to follow his probation officer's instructions, which Code § 19.2-306.1(A)(v) defines as a "technical violation."

Code § 19.2-306.1(A) enumerates ten probation violations that are "technical violation[s]." Relevant here, a probationer's failure to "follow the instructions of the probation officer, be truthful and cooperative, and report as instructed" is a technical violation. Code § 19.2-306.1(A)(v). "Because the General Assembly specifically defined 'technical violation' to include any 'violation *based on*' specified conduct," determining whether a violation is technical in nature requires us to consider whether "the violation conduct matches the conduct listed in Code § 19.2-306.1(A)." *Delaune v. Commonwealth*, 76 Va. App. 372, 382-83 (2023). To be sure, "[t]he statute focuses on the *underlying violation conduct itself*, not the particular language or label a trial court may have used in imposing a condition of probation." *Id.* at 383 (emphasis

- 6 -

added). Accordingly, if the underlying violation conduct "matches" the conduct listed in Code § 19.2-306.1(A), the violation is technical in nature. *Id.*

In addition, it is well-established that a sentencing court may "impose specific, reasonable conditions of suspension and probation tailored to each individual and situation." *Thomas*, 77 Va. App. at 621 n.5 (citing *Murry v. Commonwealth*, 288 Va. 117, 122 (2014)); *see* Code § 19.2-303 (permitting sentencing courts to "place the defendant on probation under such conditions as the court shall determine"). "[U]nless a statute specifically imposes on the circuit court the duty to set the parameters of [a probation] condition . . . , the circuit court may set the bounds of the condition and delegate to the probation office the duty to set the parameters of those conditions." *Fazili v. Commonwealth*, 71 Va. App. 239, 254 (2019). "Essentially, while the circuit court sets the terms and conditions of probation, probation officers *enforce* those terms and conditions and exercise discretion in doing so." *Id.* at 255 (emphasis added). Accordingly, we have held that where a sentencing order required the defendant to "have no use of any device that can access internet *unless approved by his Probation Officer*," the circuit court properly "delegat[ed] to the probation officer the authority *to supervise* [the defendant's] internet usage." *Id.* at 246-55 (emphases added).

"While 'special condition' is not defined by statute, violations of special conditions [imposed by a court] are 'non-technical' by nature since they condition behavior" not enumerated in Code § 19.2-306.1(A). *Burford v. Commonwealth*, 78 Va. App. 170, 183 (2023). "To be classified as special conditions, the behaviors must be distinct from the conditions included in Code § 19.2-306.1(A) and courts cannot evade the limiting sentencing scheme for technical violations by 'crafting "special conditions" that encompass conduct defined by the statute as a "technical violation."'" *Id.* (quoting *Thomas*, 77 Va. App. at 625). Indeed, if a probationer violates a "special condition" requiring him "to do something that [i]s covered by the

enumerated list of technical violations [in Code § 19.2-306.1(A)]," the violation is "a technical violation, not a special condition" violation because it is based on conduct matching that which Code § 19.2-306.1(A) expressly defines as technical in nature. *Diaz-Urrutia*, 77 Va. App. at 191 (citing *Delaune*, 76 Va. App. at 383). In that circumstance, the "defendant has committed a technical violation" and Code § 19.2-306.1(C)'s sentencing limitations apply. *Id.* at 194. Conversely, if the violation conduct does not "match" that listed in Code § 19.2-306.1(A) but matches conduct covered by a "special condition" imposed by the sentencing court, then it is a non-technical violation not subject to any sentencing limitations. *Burford*, 78 Va. App. at 182-83.

In *Delaune* we held that a probationer's drug use constituted a technical violation because it was a failure to "refrain from the use, possession, or distribution of controlled substances" under Code § 19.2-306.1(A)(vii), albeit the sentencing court required the probationer to remain "drug free" as a "special condition" of her suspended sentence. 76 Va. App. at 383. We noted that the "drug free" condition required the probationer to do no more than refrain from conduct expressly defined as a technical violation under Code § 19.2-306.1(A)(vii) and, therefore, her violation of that condition was a technical violation. *Id.*

By contrast, in *Thomas* we held that a defendant's alcohol use violated a "special condition" requiring him to abstain from drinking "*any alcohol*" and his conduct did not constitute a technical violation because Code § 19.2-306.1(A)(vi) "defines using alcohol as a technical violation *only* 'to the extent that it disrupts or interferes with' the probationer's 'employment or orderly conduct.'" *Thomas*, 77 Va. App. at 625-26. Accordingly, the defendant's "violation of his probation based on his alcohol consumption [wa]s not a technical violation under subsection (A)(vi)" because the sentencing order's alcohol condition was more restrictive than Code § 19.2-306.1(A)(vi). *Id.* at 626.

Most recently in *Burford*, we considered whether a defendant violated a "special condition" or committed a technical violation by failing to complete a recommended psychosexual evaluation. 78 Va. App. at 181-84. There, the sentencing order required the defendant to "complete a [community-based probation] mental health evaluation" and to "follow all recommendations." *Id.* at 180. After the defendant completed the mental health evaluation as directed, *someone other than his probation officer* "determined that he [also] needed to complete a psychosexual evaluation." *Id.* at 176 (alteration in original). The probation officer then instructed the defendant to follow the recommendation to complete a psychosexual evaluation, and he refused. *Id.* at 176-77.

On appeal, Burford argued that his failure to complete the recommended psychosexual evaluation amounted to a failure to follow his probation officer's instruction under Code § 19.2-306.1(A)(v). *Id.* at 181-82. We disagreed, holding that the defendant violated a special condition and, therefore, committed a non-technical violation, by refusing to complete the recommended psychosexual evaluation because the sentencing order explicitly required him to complete a mental health evaluation and "follow all recommendations," which was conduct not expressly defined as "technical" in nature under Code § 19.2-306.1(A). *Id.* at 182-84. We emphasized that "the district court's instruction to 'follow all recommendations' was explicitly tied to the district court's requirement to complete the mental health evaluation." *Id.* at 184. Moreover, "*the probation officer was not the one who recommended [the defendant] complete the psychosexual evaluation.*" *Id.* (emphasis added). Thus, given the precise language in the sentencing order, the probation officer could not relieve the defendant of his obligation to complete the recommended psychosexual evaluation. Accordingly, we held that the defendant failed to follow the instructions of the sentencing court, not the probation officer, by failing to complete the recommended psychosexual evaluation. *Id.*

The record establishes that the conduct underlying Shifflett's failure to complete sex offender treatment and 200 community service hours at a location approved by Moss were failures to "follow the instructions of [his] probation officer" and, therefore, technical violations. Code § 19.2-306.1(A)(v). First, regarding Shifflett's failure to complete sex offender treatment, the sentencing order required Shifflett to "immediately *enroll* in counseling" with "a licensed sex offender provider/counselor." It did not require Shifflett to complete a sex offender treatment program. Instead, the sentencing order required Shifflett to "comply with all the rules and requirements *set by the Probation Officer*" and "complete any . . . *treatment . . . as directed by the probation officer*." (Emphases added). That condition did not require the probation officer merely to supervise Shifflett's completion of a sex offender treatment program specifically ordered by the sentencing court. Rather, it delegated to the probation officer the authority to decide what treatment programs Shifflett needed to complete, *if any*. Indeed, if the probation officer decided that no sex offender treatment program was necessary, Shifflett did not need to complete one. Thus, any requirement to complete a sex offender treatment program necessarily came from the probation officer, not the sentencing court. *Cf. Burford*, 78 Va. App. at 183-84 (holding defendant's failure to complete a psychosexual evaluation recommended by someone other than the probation officer was a violation of a "special condition" requiring defendant to complete a mental health evaluation and follow "all recommendations"). In effect, the sentencing order's directive for Shifflett to complete any treatment as directed by his probation officer simply required Shifflett to "follow the instructions of the probation officer." Code § 19.2-306.1(A)(v).

Consistent with Virginia Department of Corrections (DOC) policy, Moss imposed "Sex Offender Special Instructions" as conditions of Shifflett's probation, which required him to "[a]ttend and successfully complete a Sex Offender Treatment Program *approved by [his]*

- 10 -

*supervising officer*." (Emphasis added). *See* Va. Dep't of Corr. Operating Procedure 735.3 (requiring probation officers to impose "Sex Offender Special Instructions" for persons convicted of certain sex crimes). As Moss reported, Shifflett "began" a sex offender treatment program in December 2020 but failed to *complete* the program as she had instructed. Thus, his failure to complete the sex offender treatment program was a failure to follow his probation officer's instruction and, therefore, a "technical violation" under Code § 19.2-306.1(A)(v). *See Thomas*, 77 Va. App. at 625 n.10 (holding defendant's failure to a complete community residential program as directed by his probation officer was a technical violation under Code § 19.2-306.1(A)(v)).

Similarly, the sentencing order instructed Shifflett to "*comply with a plan* of 200 hours of community service *coordinated* through adult probation that shall all be completed by October 7, 2021." (Emphases added). That condition required Shifflett to do nothing more than follow his probation officer's "plan" to complete a specific number of community service hours by a date certain. The record demonstrates that Shifflett completed over 200 hours of community service several months before the October 2021 deadline. Indeed, Fire Chief Marcus discussed Shifflett's community service with Moss and confirmed that in addition to completing 44 hours of approved community service at the fire station by July 2021, Shifflett performed 161 hours of community service at a church in February 2021. The "violation" was that Shifflett failed to do so at a location that Moss approved, which was a "failure to follow the instructions of the probation officer." Code § 19.2-306.1(A)(v). Accordingly, his failure to complete the required community service hours in the manner prescribed by his probation officer was a technical violation. Code § 19.2-306.1(A)(v); s*ee Diaz-Urrutia*, 77 Va. App. at 191 (observing that a violation of a "special condition" that requires a probationer to "do something . . . covered by the enumerated list of technical violations [in Code § 19.2-306.1(A)]" is a technical violation).

- 11 -

Notwithstanding the above, the Commonwealth argues that Shifflett's violations were not "technical violations" because the failure to complete community service and sex offender treatment is not conduct enumerated in Code § 19.2-306.1(A). The Commonwealth further asserts that the "ten types of conduct" Code § 19.2-306.1(A) defines as "technical violations" are "identical to the conduct prohibited by Conditions 2 through 11 of the standard terms and conditions of probation that are imposed by the [DOC]." The Commonwealth reasons that "only conduct that violates Conditions 2 through 11 of the standard terms of probation is a 'technical violation,' and conduct that violates any other condition of suspension is not."

But as we recently explained, Code § 19.2-306.1(A) defines technical violations by focusing on the "underlying violation conduct itself, not the particular language or label a trial court may have used in imposing a condition of probation." *Delaune*, 76 Va. App. at 383. If the underlying conduct "matches" the conduct specified in Code § 19.2-306.1(A), the violation is technical in nature. *Id.* Here, Shifflett's underlying conduct amounted to a failure to comply with his probation officer's instructions. We acknowledge that "in practice, the violations classified as technical ones [in subsection (A)] often stem from conditions that apply because a DOC probation officer has presented them to the felony probationer to sign as that person begins a new period of supervision." *Thomas*, 77 Va. App. at 621; *see also* Va. Crim. Sent'g Comm'n Ann. Rep. 49 (2021) (listing "standard" conditions of probation). Nonetheless, in considering whether a probation violation is "technical" in nature, we are bound by the General Assembly's definition of a "technical violation" in Code § 19.2-306.1(A), not the DOC's interpretation of what probation conditions are "standard."[4]

---

[4] Before amended and reenacted Code § 19.2-306 and newly enacted Code § 19.2-306.1 took effect, circuit court judges in revocation proceedings tailored any sanction to the nature and extent of violations proven. The change in law is an attempt to statutorily define the nature and extent of violations and dictate the sanction for those deemed "technical." Now, circuit court judges, as here, are required to conduct nuanced interpretation of a complex statutory framework

- 12 -

In sum, Shifflett's failure to complete sex offender treatment and 200 community service hours at an approved location were failures to "follow the instructions of the probation officer," which Code § 19.2-306.1(A)(v) defines as a "technical violation." As both violations were "considered at the same revocation hearing," the circuit court was obligated to treat them as a single violation. Code 19.2-306.1(A). Moreover, because Shifflett's probation violation was a "first technical violation," Code § 19.2-306(C) prohibited the circuit court from imposing active incarceration.[5]

CONCLUSION

For the above reasons, the circuit court erred by imposing three months of active incarceration on Shifflett's first technical probation violation. Accordingly, we reverse the circuit court's judgment and remand for further proceedings consistent with this opinion.

*Reversed and remanded*.

---

to discern legislative intent and separate "technical" from "non-technical" violations, when both are often intertwined. "Here, on the heels of a sea change in the applicable law," the circuit court was "required to decipher a new sentencing scheme and make a ruling" without "any guidance beyond the new additions to the statutory scheme itself." *Thomas*, 77 Va. App. at 623. The legislature can resolve this maelstrom.

[5] Although the circuit court found Shifflett in violation of probation partially based on his "attitude" and failure to "cooperat[e] with the probation officer," the parties do not dispute that this conduct was a "technical violation" because it amounted to a failure to be "cooperative" under Code § 19.2-306.1(A)(v). Regardless, under *Delaune*, Shifflett's rude, uncooperative conduct was a technical violation under Code § 19.2-306.1(A)(v).

Ortiz, J., dissenting.

I dissent from the majority's decision finding that the circuit court erred in holding Shifflett's failure to complete sex offender treatment constituted only a first technical violation— "failure to follow the instructions of the probation officer"—under Code § 19.2-306.1(A)(v). Although I agree with the majority that Shifflett's community service violation constituted, at most, a first technical violation and that the Commonwealth consented to proceeding under the new statute, I would affirm the circuit court and find that Shifflett's failure to complete sex offender treatment was a major violation of a special condition.

As it was not listed by the majority, I separately note that "[w]hether to revoke a suspended sentence 'lies in the discretion of the trial court' and will not be reversed absent an abuse of that discretion." *Thomas v. Commonwealth*, 77 Va. App. 613, 619 (2023) (citing *Carroll v. Commonwealth*, 280 Va. 641, 654 (2010)). Although such discretion is broad, "it is subject, of course, to any applicable statutory limitations," reviewed de novo. *Id.* at 620.

Additionally, the majority notes only one of the ten technical violations enumerated by the General Assembly—failure to follow the instructions of the probation officer. All ten technical violations are a "probationer's failure to":

> (i) report any arrest . . . within three days to the probation officer;
> (ii) maintain regular employment or notify the probation officer of any changes in employment;
> (iii) report within three days of release from incarceration;
> (iv) permit the probation officer to visit his home and place of employment;
> (v) follow the instructions of the probation officer, be truthful and cooperative, and report as instructed;
> (vi) refrain from the use of alcoholic beverages to the extent that it disrupts or interferes with his employment or orderly conduct;
> (vii) refrain from the use, possession, or distribution of controlled substances or related paraphernalia;
> (viii) refrain from the use, ownership, possession, or transportation of a firearm;

(ix) gain permission to change his residence or remain in the Commonwealth or other designated area without permission of the probation officer; or
(x) maintain contact with the probation officer . . . .

Code § 19.2-306.1(A).

The technical violations in Code § 19.2-306.1(A) "reflect ten of the eleven specific requirements imposed on all probationers supervised by the Department of Corrections (DOC)." *Thomas*, 77 Va. App. at 621. These violations "are based on the standard Conditions of Probation Supervision signed by a [probationer and] . . . reflect Conditions 2 through 11 of the standard Conditions of Probation Supervision." Va. Crim. Sent'g Comm'n Ann. Rep. 49 (2021). Conditions 2 through 11 are near identical to the ten technical conditions, listed above. *See* Virginia Sent'g Guidelines, *Sent'g Revocation Rep. & Probation Violation Guidelines* 97 (2022), http://www.vcsc.virginia.gov/worksheets2021/Probation%20Violation%20Booklet%20003222_ Final.pdf.

"When the violation conduct matches the conduct listed in Code § 19.2-306.1(A), it is, by definition, a 'technical violation.'" *Delaune v. Commonwealth*, 76 Va. App. 372, 383 (2023). Although the violation conduct "need not be identical" to the conduct listed in Code § 19.2-306.1 to constitute a technical violation, the "'underlying' conduct [must] 'match[]' the listed technical violation in the statute." *Thomas*, 77 Va. App. at 624. As such, we held that a condition requiring a probationer to be "drug free" was not distinct from the underlying technical conduct prohibiting the use of "controlled substances or related paraphernalia." *Delaune*, 76 Va. App. at 382-83. But we held that a special condition prohibiting the use of alcohol was distinct from the underlying technical conduct prohibiting "the use of alcoholic beverages *to the extent that [it] disrupts or interferes with his employment or orderly conduct*." *Thomas*, 77 Va. App. at 625 (emphasis added); Code § 19.2-306.1(A)(vi).

- 15 -

The circuit court imposed the following conditions on Shifflett's suspended sentence: "Good Behavior"; "Supervised Probation"; "Counseling"; "DNA & Fingerprinting"; "Court Costs"; "Sex Offender Registry"; "No Contact [with Victim]"; "Community Service"; not evicting the victim; and bringing a chaperone when alone with female renters. The "Supervised Probation" condition stated in full:

> (**X**) **Supervised Probation**: The defendant shall be placed on supervised probation under the supervision of the Office of Department of Probation and Parole serving this Court (District 24 Probation and Parole) for a period commencing upon sentencing for **Two (2) Years** in which case the defendant shall report to probation within 48 hours from this sentencing date in order to schedule an intake appointment, and follow all the rules and regulations of probation, unless sooner released by court. (**X**) The defendant shall comply with all the rules and requirements set by the Probation Officer. (**X**) The defendant shall successfully complete any screening, assessment, testing, treatment and/or education as directed by the probation officer. (**X**) The defendant shall pay any fees and costs required by the probation officer. Failure to adhere to conditions of probation could result in a show cause and/or capias against the defendant.

This condition specifically required Shifflett to "successfully *complete*" treatment "as directed by the probation officer." (Emphasis added). The circuit court ordered a separate "Counseling" condition, which stated in full:

> (**X**) **Counseling**: The defendant shall immediately enroll in counseling after this sentencing date with a licensed sex offender provider/counselor, relating to his sexual conduct and matters associated therewith.

This condition specifically required Shifflett to *enroll* in a licensed counseling or treatment program with a sex offender provider/counselor. This requirement is distinct from the boilerplate language found in the preceding "Supervised Probation" provision.

We "may not construe the plain language of a statute 'in a manner that amounts to holding that the General Assembly meant to add a requirement to the statute that it did not

actually express.'" *Commonwealth v. Amos*, 287 Va. 301, 307 (2014) (quoting *Vaughn, Inc. v. Beck*, 262 Va. 673, 679 (2001)). "To supply omissions [to a statutory scheme] transcends the judicial function." *Iselin v. United States*, 270 U.S. 245, 251 (1926). This matter is even more clearcut than our decision in *Thomas*. Enrollment[6] in a licensed sex offender counseling or treatment program does not appear in any of the statutory technical violations or in the standard Conditions of Probation Supervision. And successful completion of "any screening, assessment, testing, treatment and/or education as directed by the probation officer" is similarly absent. It is impossible to say that failing to enroll in counseling or failing to complete a sex offender treatment program—explicitly authorized and mandated by the circuit court—is "'underlying' conduct" that matches any listed technical violation in Code § 19.2-306.1(A). *See Thomas*, 77 Va. App. at 624; *Burford v. Commonwealth*, 78 Va. App. 170, 182-84 (2023).

When a circuit court directs a sex offender to enroll in and complete specific counseling or treatment related to his or her offense, orders such counseling or treatment be supervised by probation, and the sex offender flagrantly defies the court's order,[7] the majority would find the sex offender guilty of a mere technical violation for failing to follow probation's instructions. I disagree. The circuit court must have the authority to delegate supervision of its special condition programs to probation, without such supervision inherently becoming a technical violation.

To support its decision, the majority misinterprets our recent holding in *Burford*. There, the trial court ordered Burford to undergo a "mental health evaluation" and to subsequently

---

[6] Although unnecessary here—because both enrollment and completion were ordered by the circuit court—I would additionally find that when a court orders "enrollment" in a program, it inherently orders "completion" of that program. Otherwise, a probationer could enroll in counseling, immediately disenroll, and remain in compliance.

[7] Shifflett was kicked out of the sex offender treatment program for being uncooperative and combative, insulting others in the program, and failing to take accountability for his actions.

follow "all recommendations." *Id.* at 180. After undergoing the court-ordered mental health evaluation, Burford's evaluator "determined that he [also] needed to complete a psychosexual evaluation." *Id.* at 176. This psychosexual evaluation was not part of the original court order, and Burford refused to complete it. *Id.* at 176-77. The trial court found that Burford thus violated a special condition of his suspended sentence. *Id.* at 178. We affirmed, holding that Burford's "noncompliance" was more than a mere technical violation of "failing to follow the instructions of the probation officer." *Id.* at 182. Instead, Burford's "underlying conduct" constituted a "failure to follow the instructions of the court," which had specifically ordered an evaluation and impliedly ordered subsequent treatment and/or evaluations in requiring Burford to "follow all recommendations." *Id.* at 183.

Here, like *Burford*, Shifflett also failed to follow the court's instructions to complete subsequently recommended evaluations and treatment. Unlike *Burford*, however, Shifflett's order was even more explicit.

As an aside—and after already finding that "Burford's suspended sentences were conditioned in part on a special condition"—the *Burford* panel noted that the probation officer was not the individual who ordered the psychosexual evaluation, rendering Burford's argument[8] even more absurd. *Id.* at 184. The majority latches onto this dicta to hold that any time a *probation officer* is court-ordered to supervise or conduct an evaluation, failure to comply constitutes a mere technical violation.

By the majority's logic, any supervision of a special condition by probation could become a technical violation, simply because the *probation officer* is the one supervising. As a result of this opinion, our courts will be forced to supervise sex offender treatment themselves to maintain such treatment as a "special condition"—an untenable situation for an overburdened

---

[8] Specifically, that Burford failed to follow probation's instructions.

judiciary.  Our circuit courts have carried the burden of untangling a new, complicated statute and fairly enforcing it.  The majority seeks to make that burden even heavier.

Shifflett clearly violated a special condition of his suspended sentence—to enroll in and complete a sex offender counseling program.  He did not merely fail to follow probation's instructions when he was discharged from that program for being uncooperative and combative, insulting others, and failing to take accountability for his actions.  To hold otherwise ignores the circuit court's clear sentencing order and flies in the face of our holdings in *Delaune*, *Thomas*, and *Burford*.  I respectfully dissent.